PEOPLE v SHEGOG

1. CRIMINAL LAW—AIDING AND ABETTING—SPECIFIC INTENT.

The specific intent comprising an element of the crime charged can be imputed to an accessory only if the accessory himself possessed the required intent or if he aided and abetted in the perpetration of the crime knowing that the actual perpetrator had the required intent.

2. HOMICIDE—ASSAULT WITH INTENT TO COMMIT MURDER—AIDING AND ABETTING—SPECIFIC INTENT—INFERENCES.

It was reasonable for a jury to infer a common intent to commit murder where the defendant accessories were armed and threatening the victim, although the victim's wounds in fact were inflicted by another person than the defendants (MCLA 750.83).

3. CRIMINAL LAW—PRIVILEGE—SILENCE—PROSECUTOR'S COMMENT.

It was not improper for the prosecutor, during cross-examination of a defendant, to question his failure to offer information to the police when an opportunity to do so was presented after the crime charged was committed, where the prosecutor was not attempting to show the defendant's silence in the face of accusation but rather was attempting to rebut the defendant's testimony on direct examination that he had wanted to call the police but an accomplice had not, and that the police had come before they could make up their minds.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—PRESERVING QUESTION.

An appellate court will not generally review instructions to the jury unless objection to the instructions is made at trial.

5. CRIMINAL LAW—PROSECUTOR'S COMMENTS—PRESERVING QUESTION.

Testimony elicited by the prosecutor and his comment in argu-

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 123.
[2] 40 Am Jur 2d, Homicide §§ 570, 572.
[3] 29 Am Jur 2d, Evidence § 638 *et seq.*
[4, 5] 5 Am Jur 2d, Appeal and Error § 891.
[6] 21 Am Jur 2d, Criminal Law §§ 540, 581, 592, 614.

ment that an accomplice of the defendants had admitted guilt in an assault case which may have misled the jury, in that the accomplice in fact had pled guilty to a charge of assault with intent to do great bodily harm less than murder whereas the defendants were charged with assault with intent to commit murder, do not require reversal where the defendants did not object at the time to offer the judge an opportunity to give a curative instruction and where it does not appear that the defendants were prejudiced by what occurred.

6. CRIMINAL LAW—SENTENCES—INDETERMINATE SENTENCE ACT.

The indeterminate sentence act applies not only to offenses where the Legislature has established a statutory maximum number of years, but also to offenses where the maximum is "life" or "any number of years" and a sentence for such an offense in which the judge sets a definite maximum cannot have a minimum exceeding two-thirds of the maximum established by the trial judge *(People v Tanner,* 387 Mich 683 [1972]).

Appeals from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 April 5, 1972, at Detroit. (Docket Nos. 12103, 13166.) Decided December 7, 1972.

James Shegog and John Shegog were convicted of assault with intent to commit murder. Defendants appeal. Affirmed with sentences modified.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Joseph P. Zanglin,* for defendants on appeal.

Before: LEVIN, P. J., and BRONSON and VAN VALKENBURG,* JJ.

_____

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Per Curiam. The defendants, James and John Shegog, brothers, appeal their convictions, by a jury, of assault with intent to commit murder. MCLA 750.83; MSA 28.278. We affirm.

The charges against the Shegogs arose out of the shooting of Michael Yarborough. Yarborough went to James Shegog's apartment in Detroit, where there was a party, looking for a friend. He was accosted by John Shegog, who accused Yarborough of having robbed him. He was then escorted to a back room where both brothers confronted him together with Leroy Montgomery.

While in the back room Yarborough was tied and beaten. When he refused to obey a command to lie on the floor he was shot by Montgomery. At the time Yarborough was shot, James was kicking him and John was also threatening to shoot.

Yarborough lost consciousness. When he revived he was told by James that he would be taken to the hospital. He was deposited in the rear of his own car, which James drove with Montgomery as front-seat passenger. John followed in another car. The cars stopped, after a short drive, on the John Lodge Expressway. James ordered Montgomery to shoot Yarborough. Montgomery shot Yarborough in the back of the head and, with the Shegogs, fled the scene. Yarborough, though twice wounded, was able to leave the car and attracted the attention of a police patrol.

John Shegog contends that the trial judge should have directed a verdict in his favor at the close of the people's evidence. Both of the brothers were tried on the theory that they aided and abetted Montgomery in the shooting. The specific intent comprising an element of the crime charged, that is, the intent to commit murder, can be imputed to an accessory only if "he himself

possessed the required intent or [if] he aided and abetted in the perpetration of the crime knowing that the actual perpetrator had the required intent". *People v Poplar,* 20 Mich App 132, 136 (1969).

The victim, Yarborough, testified that at the time he was first shot by Montgomery in the back room of James Shegog's home all three of his captors were armed and threatening him. At the moment he was shot, James Shegog was beating him and John Shegog was threatening to shoot him. Although the victim's wounds were inflicted in fact by Montgomery, it was reasonable to infer a common intent to murder Yarborough.

James Shegog contends that his conviction should be reversed because of improper questioning by the prosecutor which deprived him of his right against self-incrimination. During cross-examination, the prosecutor questioned James' failure to offer information to the police after the shooting. James contends that his silence could not properly be used against him.

This is not a case in which the prosecutor was attempting to show the defendant's silence in the face of accusation. *Cf. People v Dailey,* 36 Mich App 312 (1971); *People v Jablonski,* 38 Mich App 33 (1972); *People v Mattice,* 38 Mich App 333 (1972). Rather, the prosecutor was attempting to rebut the testimony of James Shegog on direct examination.

James Shegog had testified that he and his brother had merely intended to make a citizen's arrest of Yarborough, that after he was shot they had decided to take him to the hospital, and that after he was shot again, accidentally, on the way to the hospital, the brothers fled in panic. James went on to testify that after the trio had returned

to his apartment, he "wanted to call the police, but [Montgomery] didn't think it was a good idea, and as soon as the police came after that, we didn't really have a chance to make up our minds".

It was not improper for the prosecutor to show in response the failure to call attention to Yarborough's plight when an opportunity to do so was presented.

James and John Shegog jointly raise several contentions which can be answered briefly.

—First, defendants argue that the prosecutor made improper and prejudicial remarks in his final argument with regard to the credibility of the testimony of several witnesses. A review of the argument leads us to conclude that the prosecutor did not exceed the bounds of legitimate argument. Further, defendants failed to either object at the time or to seek a curative instruction. *People v Evans,* 36 Mich App 238, 241 (1971); *People v Latham,* 32 Mich App 198 (1971); *People v Humphreys,* 24 Mich App 411 (1970).

—Second, defendants claim prejudicial error arising out of several supposed omissions in the judge's instructions to the jury. Defense counsel were explicitly asked whether they had any objections to the instructions as given and replied that they had none. Generally we will not review instructions to the jury unless objection to the instructions is made at the trial. *People v Lewis,* 26 Mich App 290 (1970); *People v Walsh,* 27 Mich App 100 (1970); *People v Hollis,* 30 Mich App 218 (1971); GCR 1963, 516.2.

—Third, defendants contend that they were prejudiced by misleading statements of the prosecutor. The prosecutor, on cross-examination, asked Leroy Montgomery whether he had "admitted [his] guilt

in this case", and obtained an affirmative answer from Montgomery; and, during his argument to the jury, the prosecutor referred to the fact that Montgomery had pled guilty and had admitted that "he did, in fact, assault Michael Yarborough".

It is possible that the jury was misled into believing that Montgomery had pled guilty to assault with intent to murder. In fact, his plea of guilty was to the charge of assault with intent to do great bodily harm less than murder. MCLA 750.84; MSA 28.279.

Defendants did not offer any objection to the cross-examination or the argument of the prosecutor, and, thus, did not offer the judge an opportunity to present a curative instruction to the jury. Moreover, it does not appear that the defendants were prejudiced by what occurred.

After this case was argued but before it was released to the parties the defendants moved to amend their briefs to present a *Tanner* issue.[1] We granted the motion.

In *Tanner* the Michigan Supreme Court held that any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act (MCLA 769.8, 769.9; MSA 28.1080, 28.1081). The defendants were each sentenced to serve a term of nine to ten years. Accordingly, the minimum as set by the sentencing judge was more than two-thirds of the maximum established by him. In *Tanner* the Court went on to say that its holding would have no application to sentencing under statutes for which the *only* punishment prescribed is imprisonment for life or those providing for a mandatory minimum, thereby clearly indicating that the principle enunciated in *Tanner*

---

[1] See *People v Tanner,* 387 Mich 683 (1972).

would apply not only to offenses where the Legislature establishes a statutory maximum number of years but also to offenses such as this where the *maximum* is "life" *or* "any number of years".

Accordingly, on the authority of *Tanner,* the defendants' minimum sentences are hereby reduced from 9 to 6-2/3 years.

Affirmed with sentences modified in accordance with this opinion.