NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0646n.06
No. 11-1856

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 11, 2013*
DEBORAH S. HUNT, Clerk

SYLVESTER WASHINGTON, )
)
    *Petitioner-Appellant,* )
) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR
v. ) THE WESTERN DISTRICT OF
) MICHIGAN
GREG MCQUIGGIN, )
)
    *Respondent-Appellee.* )

BEFORE:  CLAY and COOK, Circuit Judges; and OLIVER, District Judge.[*]

## I.  INTRODUCTION

OLIVER, District Judge.  Petitioner-Appellant Sylvester Washington appeals the district court's summary dismissal, with prejudice, of his 28 U.S.C. § 2254 petition for a writ of habeas corpus alleging both ineffective assistance of appellate counsel and an unconstitutional court order to pay a portion of his court-appointed attorney's fees.  For the following reasons, we AFFIRM the district court's dismissal of Washington's ineffective assistance of counsel claim and DISMISS Washington's attorney's fees claim without prejudice for lack of subject matter jurisdiction.

## II.  BACKGROUND

### A.  Factual and Procedural Background

On March 21, 2007, after Washington pleaded guilty to one count of armed robbery and one count of domestic violence, the Jackson County, Michigan, Circuit Court sentenced him to

---

[*]  The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

consecutive prison terms of 285–360 months for the armed robbery count and 16–24 months for the domestic violence count. The court ordered Washington, who had been represented by a court-appointed attorney, to pay $944.00 in attorney's fees, $472.00 for each conviction.

Washington's court-appointed appellate counsel filed a notice of appeal on March 18, 2008, and raised two issues. First, his counsel argued that the sentencing court had improperly scored the armed robbery offense under Michigan's sentencing guidelines.[1] Second, Washington's appellate counsel argued that the sentencing court had erred in ordering Washington to pay attorney's fees because it had not determined his ability to pay and because Washington was in fact indigent and could not pay the fees. The Michigan Court of Appeals rejected Washington's appeal on May 8, 2008; Washington filed a *pro se* appeal to the Michigan Supreme Court, which was denied on September 28, 2009.

Washington sought state collateral review and, again appearing *pro se*, filed a motion for relief from judgment on November 17, 2009. Washington argued that his sentence violated the *Tanner* rule (described in detail below) and that his appellate counsel was constitutionally ineffective for failing to raise the *Tanner* issue on direct appeal. As codified, the *Tanner* rule states, "[t]he court shall not impose a minimum sentence . . . that exceeds 2/3 of the statutory maximum sentence." Mich. Comp. Laws § 769.34(2)(b). Washington's armed robbery sentence (punishable by "imprisonment for life or any term of years") was 285–360 months' imprisonment; 285 is more than two thirds of 360—therefore, Washington argued, his sentence violated the *Tanner* rule.

---

[1] Michigan's guidelines use a points-based system to determine the applicable sentencing range (points are roughly analogous to offense levels under the federal guidelines); the sentencing court had scored Washington's armed robbery offense as involving "aggravated physical abuse" pursuant to Offense Variable 7, Mich. Comp. Laws § 777.37(a)

The circuit court denied Washington's motion for relief from judgment. The Michigan Court of Appeals and Supreme Court both denied Washington leave to appeal the circuit court's ruling; the Michigan Supreme Court used its denial to affirm that the *Tanner* rule did not apply to offenses, like armed robbery, "punishable by imprisonment for life or any term of years."

On May 27, 2011, Washington filed a *pro se* habeas petition in the United States District Court for the Western District of Michigan. The court summarily dismissed the petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and denied Washington a certificate of appealability. Washington appealed, and this court granted a certificate of appealability only in regard to Washington's claims that he was denied the effective assistance of appellate counsel and that he was unconstitutionally required to pay his court-appointed attorney's fees.

### B. The *Tanner* Rule

The *Tanner* rule (also sometimes called the two-thirds rule) was first announced in *People v. Tanner*, 199 N.W.2d 202 (Mich. 1972), and later codified in Mich. Comp. Laws § 769.34(2)(b). Until 2004, courts had construed *Tanner* and its statutory analog to apply to all offenses except those for which "the *only* punishment prescribed is imprisonment for life or those providing for a mandatory minimum." *People v. Shegog*, 205 N.W.2d 278, 281 (Mich. Ct. App. 1972) (emphasis added); *see also People v. Babcock*, 666 N.W.2d 231, 255 n.7 (Mich. 2003). Whether the *Tanner* rule applied to a particular offense therefore depended on the wording of the relevant provision of the Michigan penal code; for example, *Tanner* did not apply to first degree murder, which "shall be punished by imprisonment for life," Mich. Comp. Laws § 750.316(1), but did apply to armed robbery (Washington's offense), which is "punishable by imprisonment for life or any term of years," § 750.529. *People v. Reid*, 642 N.W.2d 678 (Mich. 2002), and *People v. Irving*, 641 N.W.2d

3

858 (Mich. 2002), mark the terminus of this now-defunct case line, the last two cases where the Michigan Supreme Court applied the *Tanner* rule to offenses punishable by "life or any term of years."

The Michigan Supreme Court shifted course in 2004. In *People v. Powe*, 679 N.W.2d 67 (Mich. 2004), the court declared the *Tanner* rule inapplicable to offenses punishable by imprisonment for "life or any term of years"—which included armed robbery. The court reaffirmed this interpretation of the *Tanner* rule in *People v. Drohan*, 715 N.W.2d 778, 790 n.14 (Mich. 2006),[2] and *People v. Harper*, 739 N.W.2d 523, 534 n.31 (Mich. 2007).[3]

However, the court appeared to reverse itself in *People v. Floyd*, 751 N.W.2d 34 (Mich. 2008), *vacated by People v. Floyd* (*Floyd II*), 804 N.W.2d 564, 564 (Mich. 2011). In *Floyd*, the court vacated a 62-year minimum sentence because it exceeded two-thirds of the 80-year maximum established by the trial court, "in violation of MCL 769.34(2)(b) and . . . *Tanner*," even though one of the offenses was punishable by life or a term of years. *Floyd*, 751 N.W.2d at 34. The court did not mention *Powe*, *Drohan*, or *Harper*. Nonetheless, *Floyd* post-dated those decisions, and some lower courts held that it had overruled them. *People v. Lewis*, No. 294687, 2011 WL 561596 at *7 (Mich. Ct. App. Feb. 17, 2011); *People v. Miller*, No. 293404, 2010 WL 4905081 at *4 (Mich. Ct. App. Dec. 2, 2010). As noted below, the Michigan Supreme Court vacated the *Tanner* portion of

---

[2] "We recently held that [the *Tanner* rule] does not apply when a defendant is convicted of a crime punishable with imprisonment for 'life or any term of years' because the minimum will never exceed 2/3 of the statutory maximum sentence of life." *Drohan*, 715 N.W. at 790 n.14 (citing *Powe*, 679 N.W.2d 67).

[3] "[The *Tanner* rule] does not apply when a defendant is convicted of an offense punishable by a prison sentence of 'life or any term of years' because the minimum will never exceed 2/3 of the statutory maximum sentence of life authorized by the jury verdict." *Harper*, 739 N.W.2d at 534 n.31 (citing *Drohan*, 715 N.W.2d at 778 n.14).

4

*Floyd* as inconsistent with *Powe, Drohan*, and *Harper* subsequent to Washington's filing for post-conviction relief in state court.

The circuit court judge who reviewed Washington's motion for relief from judgment found that his appellate counsel "acted in accordance with the law as it stood at the time the appeal was filed and argued" because, citing *Harper*, "the law regarding the 2/3 Rule was settled . . . ." Finding no error and no prejudice, the court denied Washington's motion. In light of his citation to *Harper* and his conclusion that the law was settled, the judge clearly relied on the Michigan Supreme Court's prior decisions in *Powe* and *Drohan*. The court found that *Tanner* did not apply to Washington's sentence because armed robbery carries a maximum sentence of "life or any term of years." Mich. Comp. Laws § 750.529. Indeed, apart from finding that *Powe* controlled at the time of Washington's direct appeal, the court concluded that the subsequent decision in *Floyd* had not overruled *Powe.* Finding no error and no prejudice, the court denied Washington's motion. The Michigan Court of Appeals and Supreme Court both denied Washington leave to appeal the circuit court's ruling.

The Michigan Supreme Court soon made clear that *Powe*, *Drohan*, and *Harper* remained good law. Using its order denying Washington leave to appeal for relief from judgment, the court found the opportunity to clarify its *Tanner* jurisprudence: "To the extent *People v. Floyd* has been seen as inconsistent with *People v. Powe*, *People v. Drohan*, and *People v. Harper*, it is disavowed." *People v. Washington*, 795 N.W.2d 816, 817 (Mich. 2011) (citations omitted). The court has since repeatedly reaffirmed that "*Tanner* does not apply to sentences where the statutory maximum is 'life or any term of years.'" *Floyd II*, 804 N.W.2d at 564 (citation omitted) (vacating the court's finding of a violation of the *Tanner* rule in *Floyd*, 751 N.W.2d at 34); *People v. Lewis*, 798 N.W.2d 15 (Mich. 2011).

5

## III. ANALYSIS

In a habeas proceeding, a district court's legal conclusions and factual findings are subject to *de novo* and clear-error review, respectively. *Moore v. Berghuis*, 700 F.3d 882, 886 (6th Cir. 2012).

### A. Ineffective Assistance of Counsel

28 U.S.C. § 2254(d) governs this court's review. In relevant part, § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

Section 2254(d) establishes a "'difficult to meet' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) (citations omitted).

Under *Strickland v. Washington*, 466 U.S. 668 (1984), in order to prove ineffective assistance of counsel, Washington must show both that his counsel's performance was constitutionally "deficient" and that this deficient performance resulted in "prejudice." The *Strickland* standard is "highly deferential," *Strickland*, 466 U.S. at 689, and "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1485 (2010).

When evaluated under § 2254(d), a court's review of a *Strickland* claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The state court's own *Strickland* analysis must receive the benefit of the doubt, and "[t]he question is whether there is any reasonable

6

argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

## 1. Deficient Performance

To establish deficient performance, Washington must show that his counsel's representation fell so far "below an objective standard of reasonableness" that "counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687–8. Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997). Because Washington alleges ineffective assistance of appellate counsel, he must demonstrate that his appellate counsel's decision not to raise the *Tanner* issue was objectively unreasonable. *See Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433 (6th Cir. 2006). Relevant considerations include whether the unraised *Tanner* issue was "significant and obvious," whether there was "arguably contrary authority on the omitted issue[]," and whether the omitted issue was "clearly stronger than those presented." *Mapes v. Coyle*, 171 F.3d 408, 427–29 (6th Cir. 1999). Washington must overcome the "'strong presumption' that counsel's representation was within 'the wide range' of reasonable professional assistance." *Harrington*, 131 S.Ct. at 778 (citations omitted). Accordingly, the court must "affirmatively entertain the range of possible reasons [Washington's] counsel may have had for proceeding as [she] did." *Pinholster*, 131 S.Ct at 1407 (quotation marks omitted); *see also Foust v. Houk*, 655 F.3d 524, 538 (6th Cir. 2011).

Because we are evaluating Washington's *Strickland* claim under § 2254(d), the inquiry is whether there is any reasonable argument that his counsel's conduct fell within the range of objectively reasonable appellate advocacy. *Harrington*, 131 S.Ct. at 788. In fact, not only did the Michigan Circuit Court find a reasonable argument that Washington's counsel was not

7

constitutionally deficient, but the court actually discovered the strongest argument available: Washington's *Tanner* issue was meritless at the time of his appeal.

Washington argues that he would have prevailed on the *Tanner* issue on direct appeal, but it is difficult to square this assertion with the facts. Washington's counsel filed an application for leave to appeal on March 18, 2008. At that time, the Michigan Supreme Court clearly held that the *Tanner* rule "does not apply when a defendant is convicted of an offense punishable by a prison sentence of 'life or any term of years' because the minimum will never exceed 2/3 of the statutory maximum sentence of life." *Harper*, 739 N.W.2d at 534 n.31; *see also Drohan*, 715 N.W.2d at 790 n. 14; *Powe*, 679 N.W.2d at 67. Armed robbery is "punishable by imprisonment for life or for any term of years," Mich. Comp. Laws § 750.529, and so the *Tanner* rule did not apply to Washington's sentence for that offense.

In his brief, Washington states that "two of the Michigan Supreme Court's three most recent decisions had applied the two-thirds cap to sentences . . . imposed under statutes providing for imprisonment for 'life or any term of years.'"[4] At oral argument, Washington's counsel did not deny that *Powe*, *Drohan,* and *Harper* were the state Supreme Court's three most recent decisions to address the *Tanner* rule, but clarified that he viewed *Drohan* and *Harper*'s discussion of the *Tanner* rule to be *dicta*, and that *Reid*, *Irving,* and *Powe* were the most recent pertinent cases because they had actually applied the *Tanner* Rule. This contention misses the point. The two cases Washington cites, *Reid* and *Irving*, did indeed apply *Tanner* to sentences subject to imprisonment for life or any

---

[4] Washington's counsel filed the application for leave to appeal in March 2008 – not March 2007, as Washington states. The error is not crucial, since the relevant law did not change in the intervening year, *see Drohan*, 715 N.W.2d at 790 n.14; the only difference is that Michigan Supreme Court once again (and for the third time) stated that the *Tanner* rule did not apply to offenses punishable by a life sentence. *Harper*, 739 N.W.2d at 534 n.31.

term of years. But *Powe* marked a clear shift in the law. *Reid* and *Irving* pre-dated *Powe*, and *Powe's* holding that *Tanner* did not apply to offenses subject to life or any term of years was clearly decided. Further, *Drohan* and *Harper,* the latest two cases to address the question at the time of Washington's appeal, confirmed, albeit in *dicta*, that the *Tanner* rule did not apply to offenses with a statutory maximum sentence of life. *Harper*, 739 N.W.2d at 534 n.31; *Drohan*, 715 N.W.2d at 790 n. 14; *Powe*, 679 N.W.2d at 67.

Given this shift by the highest court of the state, Washington's counsel could have reasonably concluded that the *Tanner* rule no longer applied to her client's armed robbery sentence and accordingly decided to focus on issues that would more likely result in some sort of relief. *See Strickland*, 466 U.S. at 689. Washington's counsel faced the Michigan Supreme Court's statements that "[the *Tanner* rule] does not apply when a defendant is convicted of an offense punishable by a prison sentence of 'life or any term of years,'" *Harper*, 739 N.W.2d at 534 n.31 (citing *Drohan*, 715 N.W.2d at 778 n.14); that "[w]e recently concluded that [the *Tanner* rule] does not apply when a defendant is convicted of a crime punishable with imprisonment for 'life or any term of years' because the minimum will never exceed 2/3 of the statutory maximum sentence of life," *Drohan*, 715 N.W. at 790 n.14 (citing *Powe*, 679 N.W.2d 67); and that "[s]ince the statutory maximums for the offenses for which the defendant was convicted are 'life or any term of years', the Circuit Court did not impose sentences that violated [the *Tanner* rule]," *Powe*, 679 N.W.2d at 67.

A reasonably competent attorney could have concluded that the law was settled and that it was therefore very unlikely that the Michigan Court of Appeals or Supreme Court would have held that Washington's sentence violated the *Tanner* rule. As the Michigan Circuit Court found when reviewing Washington's motion for relief from judgment, "the law regarding the 2/3 Rule [i.e., the *Tanner* rule] was settled when Defendant's appeal was argued." (R.44.) Furthermore, as this court

has stated, "[a]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). The Michigan Circuit Court reasonably concluded that "Defendant's appellate counsel acted in accordance with the law as it stood at the time of the appeal." Therefore, applying the doubly deferential standard of review of *Strickland* claims brought under § 2254, we conclude that the state court's determination was neither contrary to nor involved an unreasonable application of clearly established federal law. The district court correctly dismissed Washington's *Strickland* claim.

### 2. Prejudice

We resolve Washington's claim without reaching the prejudice prong of the *Strickland* test. Because Washington cannot show deficient performance, there is no need to analyze whether he was prejudiced. *Rayner v. Mills*, 685 F.3d 631, 638 n.4 (6th Cir. 2012) ("Of course, a habeas court may decline to reach the second prong if it finds that the petitioner cannot succeed on the first prong.") (citing *Rogers v. Shepherd*, 438 F. App'x 546, 549 (9th Cir. 2011)).

### B. Court-Imposed Fees

Washington claims that he was unconstitutionally required to pay his court-appointed counsel's fees. Michigan Comp. Laws § 769.1k(1) provides that, if a defendant pleads guilty or nolo contendere, the sentencing court may impose "[t]he expenses of providing legal assistance to the defendant." The statute does not require the sentencing court to determine the defendant's ability to pay before ordering recoupment of attorney's fees, and the judge who sentenced Washington did not conduct such an inquiry. Michigan Comp. Laws § 769.1*l* requires the Department of Corrections to deduct 50% of the funds over $50.00 from a prisoner's account until the fee-remittance order is paid, and does not require an ability-to-pay determination before the

10

deductions begin.[5] The State argues that the court does not have subject matter jurisdiction over the fees claim because he is not claiming the right to be released. We find that the crux of the State's argument is correct.

Under § 2254, subject matter jurisdiction exists "only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Dickerson v. United States*, 530 U.S. 428, 439 n.3 (2000) (quoting 28 U.S.C. § 2254(a)). In general, fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the "in custody" requirement of a cognizable habeas claim. *See United States v. Watroba*, 56 F.3d 28 (6th Cir. 1995) (holding that § 2255 does not grant subject matter jurisdiction over restitution orders); *Michaels v. Hackel*, 491 F. App'x 670, 671 (6th Cir. 2012) (stating that a fine is not cognizable under § 2254 and citing *Watroba*, 56 F.3d at 29); *see also Bailey v. Hill*, 599 F.3d 976, 979 (9th Cir. 2010) (holding that fines and restitution orders are not cognizable under § 2254); *Washington v. Smith*, 564 F.3d 1350, 1350–51 (7th Cir. 2009) (same); *Tinder v. Paula*, 725 F.2d 801, 804 (1st Cir. 1984) (collecting cases); Randy Hertz & James S. Liebman, 1 *Federal Habeas Corpus Practice and Procedure* § 8.2(e) (6th ed. 2012). Further, "collateral relief from a noncustodial punishment, such as a fine or restitution order, is not made readily available to a defendant just because he happens at that time to also be subject to custodial penalties." Brian R. Means, *Federal Habeas Manual* § 1:21 (2012 ed.). For habeas purposes, it is difficult to distinguish—and Washington does not attempt to distinguish—an order imposing attorney's fees from a fine or restitution order. Although

---

[5] We note that Washington challenges the constitutionality of the deduction statute, § 769.1*l*, for the first time on appeal. In his direct appeal and his habeas petition, Washington only challenged the constitutionality of § 769.1k(1), which allowed the sentencing court to issue a fee-remittance order without first determining the defendant's ability to pay. (Pet'r's Br. 16–18, Case 2:11-cv-212, ECF No. 2 (district court); Appellant's Br. 7–10 (state direct appeal).)

11

the question of whether a claim satisfies the "in custody" requirement is to some extent one of degree, *Nelson v. Campbell*, 541 U.S. 637, 646 (2004), a fee-repayment order falls outside of even "the margins of habeas," *id.*, because it is "not a serious restraint on . . . liberty as to warrant habeas relief." *Tinder*, 725 F.2d at 805; *Bailey*, 599 F.3d at 979 (quoting *Tinder*).

The district court should have dismissed that portion of Washington's petition for lack of subject matter jurisdiction. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Because Washington brought his petition *pro se*, we dismiss the fees claim without prejudice. *Id.*

## IV. CONCLUSION

We AFFIRM the district court's dismissal of Washington's *Strickland* claim and dismiss Washington's attorney's fees claim without prejudice for lack of subject matter jurisdiction.

12