# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT JAMES CRONK,

Defendant-Appellant.

UNPUBLISHED
September 1, 2015

No. 321286
Charlevoix Circuit Court
LC No. 13-011811-FH

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant, Robert James Cronk, appeals by right his jury convictions of fourth-degree arson, MCL 750.75(1), three counts of intimidating a witness, MCL 750.122(3), malicious destruction of property between $1,000 and $20,000, MCL 750.377a(1)(b)(i), and furnishing alcohol to a minor, MCL 436.1701(1). The trial court sentenced Cronk to serve prison terms of 40 to 60 months for the arson conviction, 32 to 48 months for each witness intimidation conviction, and 40 to 60 months for the malicious destruction of property conviction. The trial court also sentenced him to serve 60 days in jail for his conviction of furnishing alcohol to a minor. On appeal, Cronk argues that he did not receive a fair trial on a variety of grounds. We conclude that none of his claims of error warrant a new trial. Nevertheless, for the reasons more fully explained below, we conclude that this case must be remanded to the trial court to determine whether the trial court would impose a materially different sentence were it not for the scoring of the sentencing guidelines using facts not found by a jury. Therefore, we affirm Cronk's convictions, but remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

In June 2013, Thomas Kuzmik, Jr., Justin Lester, Joshua Fulkerson and Cronk were hanging out in downtown Boyne City. Cronk purchased some alcohol and was drinking with Lester and Fulkerson, who were minors. The group eventually went to the parking lot of an Auto Value store and tried unsuccessfully to push a car into the river. Cronk tried to break a truck's window, but was unable to do so. He then pulled a brake line near the truck's front passenger-side tire and lit it on fire. According to Kuzmik, Cronk told the group "[i]f you say anything, I'll kill you." Lester testified that Cronk told them not to tell or he would hurt them. All four ran away and eventually split up.

-1-

Fulkerson ran to his ex-girlfriend's house, and she talked him into returning to the parking lot, believing that it would be better if he "went down there and just dealt with it then." Fulkerson denied that he set the fire, but admitted that, after he returned to the parking lot, he told the officers that he set the fire; he told them that he set it "to try to take the blame or seem cool," adding that he "was drunk and being really dumb."

Officer Tavis Tannehill testified that he responded to a report about a burning truck. When he arrived, Fulkerson was talking on the phone with his mother, crying, and clearly intoxicated. According to Tannehill, Fulkerson said that "he had done a bad thing, that his life was over," and that "he and his friends had lit a truck on fire." Tannehill asked Fulkerson who else was involved and Fulkerson responded that he would rather take the rap for the fire than have to tell who was involved.

After being brought to jail and advised of his rights, Fulkerson told Tannehill that the person who set the fire was a 24-year-old felon who had been in prison and who knew people who could hurt him if he "ratted" him out. Tannehill subsequently interviewed Cronk at the police station. Cronk denied being involved with the fire; he said he was home that night by 11:00 p.m. and stayed home until 8:00 a.m. the next morning. He later admitted to buying beer, hanging out with Lester, Kuzmik, and Fulkerson, and attempting to push a car into the river, but continued to deny that he set the fire. Instead, he said he rode his bicycle home before the fire.

At trial, Cronk's theory of the case was that Fulkerson set the fire. However, the jury rejected that theory. Cronk now appeals in this Court.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

Cronk first argues that his trial lawyer's failure to subpoena Devon Leech and request a short continuance to obtain Leech's testimony amounted to ineffective assistance of counsel. Where the trial court has not held a hearing on a defendant's claim of ineffective assistance, which is the case here, this Court's review is limited to mistakes that are apparent on the record alone. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864. This Court reviews de novo whether the acts or omissions at issue fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *Id.* at 19-20.

### B. ANALYSIS

In order to establish that his trial lawyer provided ineffective assistance, Cronk must show that his lawyer's omissions fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the unprofessional errors, the result of the proceeding would have been different. *Id.* at 22. He also bears the burden to establish the factual predicate for his ineffective assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

There is no record evidence that Leech would have been willing or able to testify at the time of the trial, even with a continuance. Moreover, Cronk has not established the content of Leech's proposed testimony. Cronk's trial lawyer did mention on the record that it was his understanding that Leech had said that Fulkerson admitted to setting the fire, but Cronk has not submitted an affidavit from Leech, and his lawyer's statement was not founded on personal knowledge. Accordingly, Cronk has not established the factual predicate for his ineffective assistance claim. *Id.*

Even if we were to assume that Leech would have testified that Fulkerson admitted that he set the fire, Cronk cannot show that there is a reasonable probability that the outcome of the proceedings would have been different. *Gioglio*, 296 Mich App at 23. The proposed testimony would have been cumulative and would have had only marginal value given the testimony by Kuzmik and Lester, who both testified that Cronk set the fire.

Cronk asserts that Leech's testimony was important because Leech was the only person who could testify that Fulkerson continued to admit that he set the fire even after he sobered. Given that Kuzmik and Lester testified that Cronk set the fire rather than Fulkerson, it is unlikely that Leech's testimony about Fulkerson's admission would have altered the outcome. But it is even less likely because there was other evidence that Fulkerson continued to tell others that he set the fire after the events at issue. Tannehill testified that Cronk called him and said that "Fulkerson's bragging to other people about doing this." Tannehill also testified that he received a written statement from Jackson Watkins, who wrote that Fulkerson was bragging about having set the fire. Thus, it is evident that the jury understood that Fulkerson had claimed responsibility for the fire and bragged about it afterwards, but nevertheless found the testimony by Kuzmik and Lester, combined with Fulkerson's explanation for his behavior, to be the more credible version of events.

Cronk has not shown that he was denied the effective assistance of counsel.

Within this same argument, Cronk also asserts that the trial court should have sua sponte ordered a continuance in order to allow Leech to testify. By failing to properly raise and support this argument, Cronk has abandoned it on appeal. *People v Rose*, 289 Mich App 499, 532; 808 NW2d 301 (2010). In any event, because the trial court had no duty to order a continuance on its own motion, there is no error to review. See *People v Kelly*, 186 Mich App 524, 527; 465 NW2d 569 (1990).

## III. INSTRUCTIONAL ERRORS

Cronk next argues that the trial court erred when it gave a non-standard jury instruction, which "vitiated" his defense that he was not present when Fulkerson set the fire. Cronk's trial lawyer, however, twice expressed satisfaction with the trial court's proposed instructions. By approving the instructions in this way, Cronk's lawyer waived any claim that the instructions were erroneous. *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). Cronk also maintains that his lawyer's failure to object and to request a cautionary instruction regarding accomplice testimony both fell below an objective standard of reasonableness under prevailing professional norms and prejudiced his trial.

The trial court instructed the jury that it should not consider whether the other individuals present during the offenses were themselves guilty of a crime: "Those individuals are not on trial in this proceeding and you should not consider whether or not they may be guilty of a crime. You are only to consider whether or not this defendant has committed the crimes of which he is charged." In Cronk's view, this instruction had the effect of instructing the jury that it could not consider whether Fulkerson was in fact the person who set the fire. The trial court did not, however, instruct the jury that it could not consider whether Fulkerson set the fire; it instructed them that the other participants' culpability in any crime should not persuade the jury one way or another as to whether Cronk was guilty of any of the charges against him. That is, the trial court properly focused the jury on the question of whether the evidence properly adduced at trial established beyond a reasonable doubt that Cronk committed the crimes. The trial court's instruction did not preclude the jury from determining who set the fire; it cautioned the jury that whether the other individuals involved committed a crime was not properly before it. Because the instruction was not objectionable, Cronk's lawyer cannot be faulted for failing to object to it. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Similarly, this Court has held that the cautionary instruction regarding accomplice testimony is not warranted when neither side argues that the disputed witness was an accomplice. *People v Allen*, 201 Mich App 98, 105; 505 NW2d 869 (1993). Such is the case here. The prosecution argued that Cronk alone set the fire, and Cronk argued that Fulkerson alone set the fire. As such, there was no need for an accomplice instruction and Cronk's lawyer was not ineffective for failing to request one. *Snider*, 239 Mich App at 425.

Cronk has not established any error with regard to the instructions that warrants relief.

## IV. PROSECUTORIAL ERROR

### A. STANDARD OF REVIEW

Cronk next asserts that the prosecutor erred in several respects during closing arguments. Specifically, he maintains that the prosecutor's comments improperly shifted the burden of proof and denigrated his trial lawyer. This Court reviews de novo whether the prosecutor committed an error that denied the defendant his right to a fair and impartial trial. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

### B. ANALYSIS

During closing argument, the prosecutor commented on the fact that it was essentially undisputed that Cronk furnished alcohol to the minors:

> . . . I don't think there was even a hint that this alcohol wasn't bought by Mr. Cronk. All the witnesses said that and you've heard no opposing evidence to that. So again, it's correct what [defense counsel] said in the opening. It's correct what the Judge said obviously in the initial instructions. They don't have to prove anything. Mr. Cronk doesn't have to prove that he's innocent. Mr. Cronk doesn't have to prove to you that he didn't do something but when there's evidence introduced that he did do it then he has the opportunity to introduce evidence to show that he didn't do it.

Cronk's lawyer objected at this point and the trial court warned the prosecutor that "you're getting awful close to [implicitly shifting the burden of proof]. I would avoid that." The prosecutor also mentioned "ghosts that are out there that never were brought in" and reminded the jury to "base your decision in this case on the evidence that was presented to you," also noting that there was no testimony from other witnesses that could have supported Cronk's defense. During rebuttal, the prosecutor once more commented on Cronk's ability to call witnesses:

> I was talking earlier about witnesses and who can call witnesses and [defense counsel] objected and the Judge rightfully reminded me, let's keep in mind here: the burden of proof is completely on me. He doesn't have to prove a thing. What I was trying to say and perhaps was saying it inartfully (sic) is he certainly has a right to call witnesses to the witness stand. He has the same right to do that as I do. Okay?

After Cronk's lawyer again objected, the prosecutor protested: "That's a correct statement of the law, your Honor." The trial court agreed, but reminded the jury that the burden was on the prosecution, not the defense: "In fact, I instructed the jury to that during the preliminary instructions. However–and I'll instruct them again–there should be no indication of shifting the burden. He has no obligation to call witnesses."

With these comments, the prosecutor was arguably commenting on and highlighting the weakness of Cronk's theory in relation to the evidence. See *People v Fields*, 450 Mich 94, 115-118; 538 NW2d 356 (1995). And, even if the prosecutor's remarks were improper, the trial court properly instructed the jury that Cronk had no obligation to call witnesses, that the lawyers' statements and arguments were not evidence, that the jury should only accept things that a lawyer said that were supported by the evidence or by common sense, and that the jury was to decide the facts of the case, including whether to believe a witness. Whatever prejudice might have arisen by these remarks was tempered by the fact that Cronk's lawyer objected and the trial court properly responded to the potential prejudice. Additionally, with regard to the statement concerning the alcohol, Cronk's trial lawyer conceded that Cronk was guilty of that charge. Accordingly, viewing the comments in context and considering the totality of the record, these instructions cured any minimal prejudice occasioned by the remarks. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

During closing arguments, the prosecutor also argued that the jury should not be distracted by Cronk's trial lawyer's questions:

> We had a lot of questions about this thing called Rush and bath salts. Was that in the evidence in this case? No. Was there any evidence that anyone smoked marijuana? No. These are distractions. It's a game. Let's get you away from focusing on the elements of these crimes. Let's talk about who's on this and who does this and how many drinks they had. It's a distraction. Don't be distracted. This is too important to be fooled, to be tricked.

"A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). The prosecutor's comments suggested that Cronk's lawyer was trying to distract the jury from the truth. However, the prosecutor's comments must be considered in context because " 'an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument.' " *Id*. at 593, quoting *People v Kennebrew*, 220 Mich App 601, 608, 560 NW2d 354 (1996). Here, the prosecutor highlighted—albeit in strong terms—the fact that Cronk's lawyer's argument that Fulkerson might have used marijuana was unsupported by the evidence and should play no role in the jury's findings. And, to the extent that the remarks went beyond the bounds of propriety, the trial court's instruction that the lawyers' comments were not evidence and could not be considered was sufficient to cure the prejudice. *Abraham*, 256 Mich App at 279.

There were no prosecutorial errors that warrant a new trial.

## V. SUFFICIENCY OF THE EVIDENCE

Cronk next argues that the prosecutor failed to present sufficient evidence to prove beyond a reasonable doubt that he intimidated Fulkerson. "In challenges to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009).

In order to prove the charge at issue in relevant part, the prosecutor had to present evidence that Cronk "by threat or intimidation" discouraged or attempted to discourage Fulkerson from testifying or giving information "at a present or future official proceeding," influenced or attempted to influence Fulkerson's "testimony at a present or future official proceeding," or encouraged or attempted to encourage Fulkerson to "avoid legal process, to withhold testimony, or to testify falsely in a present or future official proceeding." MCL 750.122(3). Kuzmik testified that, after Cronk set the fire, all four of them ran off together and Cronk told them not to say anything and threatened them before they split up. Lester similarly testified that Cronk threatened to harm them if they said anything and that he did so before they split up. By contrast, Fulkerson testified that he did not recall Cronk making any threats. Because the jury was free to accept the version of events related by Kuzmik and Lester, which it apparently did, this testimony was sufficient to establish that Cronk attempted to encourage Fulkerson to withhold testimony or testify falsely, even if Fulkerson did not recall the threat.

## VI. SENTENCING ERRORS

Cronk argues that the trial court erred when it found that he was a leader in a multiple offender situation and, on that basis, scored offense variable (OV) 14 at 10 points. This Court reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the facts, but reviews for clear error the findings underlying the trial court's application of the law. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

The trial court had to score OV 14 at 10 points if it found that Cronk "was a leader in a multiple offender situation." MCL 777.44(1)(a). When scoring OV 14, the entire criminal transaction should be considered. MCL 777.44(2)(a). A "multiple offender situation" "is a situation consisting of more than one person violating the law while part of a group." *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350, vacated in part on other grounds 494 Mich 880 (2013).

In *Jones*, 299 Mich App at 285, the defendant was convicted of three counts of assault with intent to do great bodily harm less than murder. The defendant and a friend (Taiwan) got into a confrontation with another group of young men at a mall. *Id.* Both the defendant and Taiwan were armed and drew guns during the confrontation, but the defendant was the only person to fire his gun. *Id.* On appeal, the defendant claimed that he could not be scored as a leader in a multiple offender situation under OV 14, asserting "that 'there must be more than one person actively participating in the charged offense(s)' for there to be a multiple-offender situation under OV 14 and that he was the only person who committed the assaults and the only person charged with the underlying offenses." *Id*. at 286.

This Court rejected the argument, holding that the sentencing court should consider the entire transaction, not just the underlying offense, in determining whether there was a multiple offender situation, "i.e., a situation consisting of both defendant and Taiwan violating the law while part of a group." *Jones*, 299 Mich App at 288. In affirming the score of 10 points, this Court noted that during the entire transaction the defendant and Taiwan violated MCL 750.170 (prohibiting a disturbance of the peace in a store or business place) and MCL 750.234e (prohibiting the brandishing of a firearm in public).

Here, there was testimony that Cronk, Kuzmik, Fulkerson, and Lester were together as a group, and that Cronk was drinking with Lester and Fulkerson, who were drinking in violation of MCL 436.1703. The group went to the parking lot and attempted to push a car into the river, an attempted violation of the law prohibiting the malicious destruction of property. See MCL 750.92; MCL 750.377a. Thus, although Cronk is correct that the evidence may not have supported a finding that the arson was a multiple offender situation, the entire transaction was a multiple offender situation, because the evidence showed that more than one person violated the law while part of a group.

The trial court did not clearly err when it found that Cronk was a leader in a multiple offender situation.

Finally, Cronk contends that the trial court erred when it imposed a mandatory minimum sentence calculated on the basis of facts not found by a jury. Our Supreme Court recently held that Michigan's sentencing scheme is unconstitutional to the extent that it compels an increase in a defendant's mandatory minimum sentence using facts not found by a jury. See *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015). Where, as here, the minimum sentence range was increased on the basis of such findings, but where the defendant did not properly preserve a challenge to the constitutionality of his or her sentencing, our Supreme Court has stated that this Court should remand the case to the trial court to "determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id.* slip op at 34.

-7-

In this case, the trial court considered the recommended minimum sentence range, but recognized that it could not impose a minimum sentence greater than two-thirds of the statutory maximum, even though the sentencing guidelines range exceeded that threshold. See MCL 769.34(2)(b); *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972) (holding that a minimum sentence exceeding two-thirds of the maximum permitted by law is improper because is not indeterminate). It then exercised its discretion to impose the two-thirds maximum for the minimum sentence of each offense. Although it appears evident that the trial court felt that Cronk's offenses warranted the maximum minimum sentence allowed by law, consistent with our Supreme Court's decision in *Lockridge*, we remand this case to the trial court for the required determination. See *id.* slip op at 32-36 (discussing the particulars of a remand under *United States v Crosby*, 397 F3d 103, 117-118 [CA 2, 2005]).

Because there were no errors warranting a new trial, we affirm Cronk's convictions. However, we remand this case to the trial court for a determination as to whether it would have imposed a materially different sentence but for the constitutional error in the calculation of the minimum sentence range.

Affirmed, but remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro