PEOPLE $v$ TANNER

OPINION OF THE COURT

1. CRIMINAL LAW—INDETERMINATE SENTENCE ACT—CONSTITUTIONAL LAW—CRUEL OR UNUSUAL PUNISHMENT—DUE PROCESS.

Michigan's present indeterminate sentence act is not constitutionally infirm as providing cruel or unusual punishment or as denying due process (MCLA 769.8, 769.9).

2. CRIMINAL LAW—SENTENCES—INDETERMINATE SENTENCE ACT—LEGISLATIVE INTENT.

Sentences with a period of but 30 days between minimum and maximum, though technically providing some period, though brief, within which correction authorities may exercise the discretion vested in them by the Legislature, fail to comply with the clear intent and purpose of the indeterminate sentence act (MCLA 769.8, 769.9).

3. CRIMINAL LAW—SENTENCES—INDETERMINATE SENTENCE ACT—REGULAR GOOD TIME—SPECIAL GOOD TIME.

A sentence either does or does not comply with the indeterminate sentence act, irrespective of the effect of special remedial provisions such as those granting regular and special good time (MCLA 769.8, 769.9, 800.33).

4. CRIMINAL LAW—SENTENCES—MINIMUM SENTENCE—MAXIMUM SENTENCE—INDETERMINATE SENTENCE ACT—LIFE SENTENCE—MANDATORY MINIMUM SENTENCE—STATUTES—MANSLAUGHTER.

Any sentence, except under statutes by which the only punishment precribed is life imprisonment or those providing for a mandatory minimum. which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 540, 581, 614.
[2–4, 6–8, 13, 14] 21 Am Jur 2d, Criminal Law §§ 540, 592.
[5] 21 Am Jur 2d, Criminal Law § 592.
[9–13] 59 Am Jur 2d, Pardon and Parole §§ 81–84.

with the indeterminate sentence act because a sentence with too' short an interval between minimum and maximum is not indeterminate; therefore, defendant's sentence of 14 years, 11 months to 15 years in prison for manslaughter should be vacated and the case remanded for resentencing (MCLA 769.8, 769.9).

OPINION FOR AFFIRMANCE
BLACK AND T. E. BRENNAN, JJ.

5. HOMICIDE—MANSLAUGHTER—SENTENCE—INDETERMINATE SENTENCE —STATUTES.

*A sentence upon first conviction of manslaughter is controlled by the indeterminate sentence statute (MCLA 750.321, 769.8).*

6. HOMICIDE—MANSLAUGHTER—SENTENCE—MINIMUM    SENTENCE— STATUTES.

*It must be assumed that the length of the minimum sentence was appropriate to serve the corrective purposes of sentencing where the sentence imposed was 14 years 11 months minimum to 15 years maximum on a conviction of manslaughter and was a sentence authorized by law and where nothing was shown to suggest any claim that the sentence was not appropriate in light of defendant's conduct, attitude, character and past criminal record (MCLA 750.321, 769.8).*

7. CRIMINAL LAW—SENTENCE—INDETERMINATE SENTENCE.

*The indeterminate sentence law is designed to serve the rehabilitative and corrective goals of the criminal justice process (MCLA 769.8).*

8. CRIMINAL LAW—SENTENCE—MAXIMUM SENTENCE—MINIMUM SENTENCE—DISPARITY OF SENTENCING—INDETERMINATE SENTENCE— PAROLE—STATUTES.

*By law all those convicted of the same crime receive the same maximum term fixed by the criminal statute; disparity arises in the minimum terms, fixed by the sentencing courts, and disparity was quite purposely built into the system by legislative enactment because it was thought that punishment should be tailored to fit the offender and that a system of variable minimum terms was best suited to provide optimum discretion in the parole authorities consistent with the defendant's threat to the community as perceived by the trial judge (MCLA 769.8).*

9. Pardon and Parole—Minimum Sentence—Maximum Sentence.

*The period of time during which an inmate can be set at large on parole varies in an inverse ratio to the length of the minimum term since the commission of an offense subjects the convicted person to a single fixed maximum term of imprisonment.*

10. Pardon and Parole—Parole Board—Maximum Sentence.

*The object of parole is to keep the prisoner in legal custody while allowing him to live beyond the prison enclosure to give him a chance to show that he can shun crime and the length of a period of parole is determined by the parole board within the time remaining of the maximum term of imprisonment.*

11. Pardon and Parole—Minimum Parole—Parole Board—Statutes.

*Present Michigan statutes do not mandate minimum periods of parole, that judgment, in general, is made by the parole board.*

12. Pardon and Parole—Minimum Sentence—Parole Board—Judges—Statutes.

*By statute, if the parole board believes that the period of confinement under the minimum sentence imposed is too long; that a greater proportion of the total imprisonment should be devoted to parole status rather than confinement, such decision should be made on an individual case basis and the approval of the trial judge sought (MCLA 791.233[b]).*

13. Criminal Law—Sentence—Pardon and Parole—Statutes.

*The statutory scheme of sentencing and parole consideration is complete and purposely flexible as presently written.*

14. Criminal Law—Sentence—Minimum Sentence—Indeterminate Sentence—Supreme Court.

*There is no authority in the Michigan Supreme Court to prescribe arbitrary regulations with respect to minimum sentences, especially in light of the legislative history of indeterminate sentencing in Michigan.*

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and Fitzgerald and V. J. Brennan, JJ., denying application for leave to appeal from Recorder's Court of Detroit, Samuel H. Olsen, J. Submitted December 7, 1971. (No. 4 December Term

1971, Docket No. 53,232–1/2.) Decided July 26, 1972.

Richard Lawrence Tanner was convicted, on his plea of guilty, of manslaughter. Defendant's application for leave to appeal to the Court of Appeals denied. Defendant appeals. Sentence vacated and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office (Norman L. Zemke, P. C.,* of counsel), for defendant on appeal.

T. M. KAVANAGH, C. J. Charged with first-degree murder, defendant pleaded guilty to manslaughter on the fifth day of trial. He was thereafter sentenced to serve 14 years, 11 months to 15 years in prison. The Court of Appeals denied defendant's application for leave January 6, 1971. We granted leave. 384 Mich 825 (1971).

Defendant presents three issues for review which attack the sentence imposed as: (1) an abuse of discretion; (2) cruel or unusual punishment; and (3) a violation of due process.

By their 1902 amendment of the Constitution of 1850, the people first provided the legislature with the power to establish indeterminate sentences following the Supreme Court's holding in *People v Cummings,* 88 Mich 249 (1891), that any such power must be established in the organic law. Subsequent to that amendment, in *People v Cook,* 147 Mich 127

(1907), the Court referred to and adopted the reasoning of the minority opinion in *In re Manaca,* 146 Mich 697 (1906), wherein Justice MOORE laid to rest all questions of the constitutionality of indeterminate sentencing. We likewise hold that our present indeterminate sentence act is not constitutionally infirm as providing cruel or unusual punishment or as denying due process.

Defendant's remaining issue concerns the application of the statute to his sentence. Generally, in the past, this Court has refused to review sentences in any context, typically observing, as in *People v Guillett,* 342 Mich 1, 9 (1955), that:

"It is sufficient to say that the sentence was within the maximum provided by statute."

Even in *People v Murray,* 72 Mich 10, 17 (1888), though the Court opined that the 23-year-old defendant's sentence of 50 years for carnal knowledge of a female under 14 was excessive as unwarranted by the record, and all agreed that the trial court had abused its discretion in so pronouncing sentence, a new trial was ordered for other reasons.

In other cases presenting the question, we find a number of examples of questionable sentencing. In reviewing the sentencing in this case, we begin with the observations of Justice CARPENTER in *In re Campbell,* 138 Mich 597, 599 (1904), which, though addressed to the indeterminate sentence act of 1903,[1] have relevance to our present discussion:

"If it does, the trial judge, by prescribing a very low maximum, *may totally deprive the governor, pardon board, and board of control of the opportunity to exercise the discretion which the statute intended to give them.* If it does, then the trial judge, in cases where he can fix the minimum * * *

---

[1] 1903 PA 136.

*may, by increasing the minimum and [or] reducing
the maximum, make a determinate sentence, and
thus frustrate the legislative purpose in enacting
the indeterminate sentence law."* (Emphasis
added.)

Though the question comes to us couched in terms
of abuse of discretion, it clearly involves, and we
address ourselves to, the purely legal proposition
of whether defendant's sentence is in fact "indeter-
minate" as contemplated by the provisions of MCLA
769.8 and 769.9; MSA 28.1080 and 28.1081.

The three cases popularly raised in sentencing
appeals are: *People v Earegood,* 12 Mich App 256
(1968), *rev'd* 383 Mich 82 (1970); *People v Lessard,*
22 Mich App 342 (1970); and *People v Snow,* 26
Mich App 510 (1970), *aff'd* 386 Mich 586 (1972).

*People v Earegood, supra,* while dealing with
discretionary abuses in sentencing practice, actually
turned on constitutional issues. The Court criti-
cized the systematic discretionary abuse, and held
that the exercise of a constitutional right may not
properly be considered in sentencing.

*People v Lessard, supra,* is more in point to the
issue at hand. Defendants Lessard and Schultz
both received sentences which had the minimum set
one day short of the maximum pursuant to the trial
court's declared new sentencing policy. The Court
of Appeals remanded for new sentencing on the
basis that the trial court had *failed to exercise* its
discretion in pronouncing sentence. Note the Court
did not hold the sentences imposed to be determinate
and thereby in conflict with MCLA 769.8; MSA
28.1080.

*People v Snow, supra,* was decided on the same
basis as *People v Earegood, supra.* The question
of compliance with the indeterminate sentence act
was neither presented nor considered.

Having before us a plethora of cases involving sentences with a period of but 30 days between minimum and maximum, we are constrained to observe that though technically providing some period, though brief, within which the correction authorities may exercise the discretion vested in them by the Legislature, such sentences fail to comply with the clear intent and purpose of the indeterminate sentence act.

We recognize that by virtue of the regular good time provision alone the defendant herein *might* actually serve a minimum of only 10 years, 9 months and 12 days. However, we are of the opinion that a sentence either does or does not comply with the indeterminate sentence act, irrespective of the effect of special remedial provisions such as those granting regular and special good time.[2] We note in this context that the American Bar Association's minimum standards for criminal justice, 3.2(c) (iii), reads:

"In order to preserve the principle of indeterminacy, the court should not be authorized to impose a minimum sentence which exceeds one-third of the maximum sentence actually imposed;".

However, we need not adopt this American Bar Association recommendation literally. Michigan's statutory provisions relating to regular and special good time credits in conjunction with the rule we hereby adopt today fairly approximates the objective of the American Bar Association's minimum standards 3.2(c)(iii).

Thus, turning to the precise proposition involved, we are convinced that 30 days is not a sufficient interval of time to guarantee that the corrections

[2] MCLA 800.33; MSA 28.1403. With regular *and* special good time credits, the actual minimum here would be 8 years, 8 months and 18 days.

authorities will be able to exercise their jurisdiction or judgment with any practicality. The net effect of such severe judicial limitation on indeterminate sentencing is to frustrate the intended effect of indeterminate sentencing.

Convinced as we are, that a sentence with too short an interval between minimum and maximum is not indeterminate, we hold that any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act.

Of course this holding has no application to sentencing under statutes by which the only punishment prescribed is imprisonment for life, or those providing for a mandatory minimum. See, MCLA 769.9; MSA 28.1081.

Based upon the principles analyzed and discussed in *People v Hampton,* 384 Mich 669 (1971), we hold that the decision herein is prospectively limited to those cases in which sentence is to be or has been imposed after date of filing of this opinion and to those cases which on date of filing of this opinion are pending on appeal and which have properly raised and preserved the issue for appeal. Sentences imposed prior to date of this decision and not pending on appeal upon properly preserved specific issue shall not be affected by the rule herein adopted.

Defendant's sentence is vacated and the case is remanded to the trial court for resentencing in accordance herewith.

ADAMS, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with T. M. KAVANAGH, C. J.

T. E. BRENNAN, J. (*for affirmance*).   Defendant
was convicted upon his plea of guilty to the crime
of manslaughter.

MCLA 750.321; MSA 28.553, provides:

"Sec. 321.   Manslaughter—Any person who shall
commit the crime of manslaughter shall be guilty
of a felony punishable by imprisonment in the state
prison, not more than 15 years or by fine of not more
than 7,500 dollars, or both, at the discretion of the
court."

A sentence upon first conviction of manslaughter
is controlled by the indeterminate sentence statute;
MCLA 769.8; MSA 28.1080:

"Sec. 8.   When any person shall hereafter be con-
victed for the first time of crime committed after
this act takes effect, the punishment for which pre-
scribed by law may be imprisonment in the state
prison at Jackson, the Michigan reformatory at
Ionia, the state house of correction and branch of
the state prison in the upper peninsula, the Detroit
house of correction, or any other prison, the court
imposing sentence shall not fix a definite term of
imprisonment, but shall fix a minimum term except
as hereinafter provided.   The maximum penalty
provided by law shall be the maximum sentence in
all cases except as herein provided and shall be
stated by the judge in passing sentence.   He shall
before or at the time of passing such sentence as-
certain by examination of such convict on oath, or
otherwise, and by such other evidence as can be ob-
tained tending to indicate briefly the causes of the
criminal character or conduct of such convict, which
facts and such other facts as shall appear to be per-
tinent in the case, he shall cause to be entered upon
the minutes of the court."

The issue here is whether the sentence imposed
of 14 years 11 months minimum to 15 years maxi-
mum is a sentence authorized by law.   The majority

do not conclude that the sentence is cruel or unusual or violative of due process.

Nothing in the briefs or arguments before this Court would suggest any claim that the sentence was not appropriate in light of the defendant's conduct, attitude, character and past criminal record.

Therefore, we must assume that the length of the minimum sentence was appropriate to serve the corrective purposes of sentencing in this particular case and with respect to this particular defendant.

Putting it in a different way, this case presents the question of whether there can *ever* be *any* circumstances under which a sentence of 14 years and 11 months to 15 years would *not* be an abuse of the sentencing court's discretion.

Indeterminate sentencing came into being in Michigan by Act 136 of the Public Acts of 1903. That act provided that the maximum sentence " * * * shall not exceed the maximum term provided by law * * * " and no prisoner was to be discharged " * * * until after he shall have served at least the minimum term as provided by law * * * ". Where no minimum term was fixed by law for the crime charged, the court was to fix the minimum when passing sentence, such minimum to be fixed at no less than six months. Where no minimum was fixed by the court, a six-months' minimum was applied.

The maximum term as fixed by the statute was held to be the maximum term applicable to each sentence. *In re Campbell,* 138 Mich 597 (1904); *In re Duff,* 141 Mich 623 (1905).

Act 184 of 1905 was adopted in part to clarify the law and embodied the rule of the *Campbell* and *Duff*

cases. The maximum term provided by statute was designated as the maximum term in every case. Court-set minimums were required to be at least six months, and the act specifically provided in § 2 that:

"[T]he minimum term of imprisonment fixed by the court shall not exceed one-half of the maximum term of imprisonment fixed by statute * * * ."

Act 184 also required the sentencing judge to recommend a maximum term, which recommended maximum was not to exceed the automatically imposed statutory maximum.

Thus, under the act of 1905, a sentence for a 15-year felony would have to be at least 6 months to 15 years, and could not be more than 7-1/2 years to 15 years. Additionally, the trial judge would recommend a maximum term, which could presumably be anything from 6 months to 15 years.

Act 184 of 1905 was the subject of judicial construction in *In re Richards*, 150 Mich 421 (1907).

There, the trial judge's recommended maximum was treated as a fixed maximum where the statute under which the defendant was convicted imposed no specific maximum term. A minimum term of one-half the maximum term was imposed by operation of law in light of the fact that the court-fixed minimum exceeded one-half of the maximum term.

Act 184 of 1905 was amended by Act 259 of the Public Acts of 1921. Where Act 184 had prohibited minimum terms which exceeded one-half of the maximum term, Act 259 of PA 1921, provided in section 2:

"[T]he minimum term of imprisonment fixed by the court shall be such time as the trial judge making the sentence recommends as the term of imprisonment of the person convicted * * * ."

Thus, the amendment of 1921 converted what was previously a court-recommended maximum term into a court-fixed minimum term, retaining the statutorily provided maximum term as the maximum term applicable to all cases.

Act 175 of PA 1927 brought the indeterminate sentencing law to its present form. Under it, the trial judge does not fix or recommend a maximum term. The trial court does, however, fix a minimum term of imprisonment.

It is generally conceded that the indeterminate sentence law is designed to serve the rehabilitative and corrective goals of the criminal justice process. Of course the criminal law has other purposes to serve as well. Necessarily, any statute in the area of sentencing is an expression of some compromise among competing ends sought to be accomplished.

Our present sentencing statutes have come in for considerable study and discussion in recent years. The phrase "disparity of sentencing" has come into vogue despite the fact that, by law, all those convicted of the same crime receive the same maximum term fixed by the criminal statute.

Thus every person sent to prison for manslaughter receives the same maximum term, *i.e.,* 15 years. Disparity arises in the minimum terms, fixed by the sentencing courts. It is said that disparity leads to dissatisfaction on the part of prison inmates, who perceive injustice in the differing periods of time they are actually behind bars for the same offenses.

But disparity was quite purposely built into the system by legislative enactment. It was thought that punishment should be tailored to fit the offender, and that a system of variable minimum terms was best suited to provide optimum discretion in the parole authorities consistent with the

defendant's threat to the community as perceived by the trial judge.

Since the commission of an offense subjects the convicted person to a single fixed maximum term of imprisonment, it follows that whenever the period of time during which an inmate can be set at large on parole varies in an inverse ratio to the length of the minimum term.

Ignoring good-time allowances, a prisoner, for example, sentenced two years to ten years is liable to an eight-year term of parole, while another inmate sentenced to eight years to ten years is liable only to two years of parole.

MCLA 791.238; MSA 28.2308, defines parole status:

"Sec. 38. * * * A parole granted a prisoner shall be construed simply as a permit to such prisoner to go without the enclosure of the prison, and not as a release, and while so at large he shall be deemed to be still serving out the sentence imposed upon him by the court, and shall be entitled to good time the same as if he were confined in prison."

The object of parole is to keep the prisoner in legal custody while allowing him to live beyond the prison enclosure to give him a chance to show that he can shun crime. *In re Dawsett,* 311 Mich 588 (1945).

The length of a period of parole is determined by the parole board within the time remaining of the maximum term of imprisonment.

MCLA 791.242; MSA 28.2312, provides that:

"Sec. 42. When any paroled prisoner has faithfully performed all of the conditions and obligations of his parole for the period of time fixed in such order, and has obeyed all of the rules and regulations adopted by the parole board, he shall be deemed to have served his full sentence, and the

parole board shall enter a final order of discharge and issue to the paroled prisoner a certificate of discharge.

"No parole shall be granted for a period less than 2 years in all cases of murder, actual forcible rape, robbery armed, kidnapping, extortion, or breaking and entering an occupied dwelling in the night time except where the maximum time remaining to be served on the sentence is less than 2 years."

The Legislature has made no other determination as to the minimum or maximum period of time to which a prisoner should be liable to parolee status. There are many who believe that rehabilitation of convicts is best accomplished in community surroundings. Indeed, it has been said that true rehabilitation does not begin until a convicted person has been returned to society.

Whatever the merits of those views, our present statutes do not mandate minimum periods of parole.

In general, that judgment is made by the parole board. Too often, however, it is left to the simple arithmetic of deducting the minimum from the maximum term.

There is a seldom-used statute which permits parole consideration prior to the expiration of the minimum term.

MCLA 791.233(b); MSA 28.2303(b), provides:

"Sec. 33. (b) That no parole shall be so granted to any prisoner until he has served the minimum term imposed by the court less such allowances for good time or special good time as he may be entitled to by statute: Provided, That prisoners shall be eligible for parole prior to the expiration of their minimum terms of imprisonment whenever the sentencing judge or his successor in office shall give his written approval of the parole of such prisoner

prior to the expiration of such minimum terms of imprisonment;  \*  \*  \*  ."

If the parole board believes that the period of confinement is too long; that a greater proportion of the total imprisonment should be devoted to parole status rather than confinement, such decision should be made on an individual case basis and the approval of the trial judge sought.

Whether the refusal of a trial judge to approve recommended early parole consideration is reviewable, has not been passed upon by this Court.

It is my conclusion that the statutory scheme of sentencing and parole consideration is complete and purposely flexible as presently written.

There is no authority in this Court to prescribe arbitrary regulations with respect to minimum sentences, especially in light of the legislative history of indeterminate sentencing in our state.

I would affirm.

BLACK, J., concurred with T. E. BRENNAN, J.