# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES DEAN WRIGHT,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No.  321217
Missaukee Circuit Court
LC No.  2013-002570-FC
            2013-002596-FC

Before:  MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted in LC No. 2013-002596 of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a), victim under 13 years of age, and two counts of second-degree criminal sexual conduct (CSC II), victim under 13, MCL 750.520c(1)(a), and was convicted in LC No. 2013-002570-FC of CSC I, victim under 13 years of age while defendant was over 17 years of age, MCL 750.520b(2)(b), and two counts of CSC II, victim under 13 years of age while defendant was over 17 years of age, MCL 750.520c(2)(b). The trial court sentenced defendant to concurrent prison terms of 25 to 40 years for the CSC I conviction in LC No. 2013-002570-FC, 15 to 25 years for the CSC I conviction in LC No. 2013-002596-FC, and 5 to 15 years for each of the CSC II convictions. Defendant appeals by right. We affirm but remand for resentencing on the CSC I conviction in LC No. 2013-002570-FC.

Defendant first argues that the evidence was insufficient to convict him of CSC I in LC No. 2013-002570-FC. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We view the evidence in the light most favorable to the prosecutor to ascertain whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). Circumstantial evidence and reasonable inferences that arise from the evidence may constitute sufficient proof to support a conviction. *Ericksen*, 288 Mich App at 196. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428.

Defendant disputes his conviction for "touching of [one victim's] genital openings with [his] mouth or tongue." Defendant argues that the evidence did not demonstrate that he touched the victim's genitals with his mouth or tongue. However, the victim explained that defendant

-1-

entered her bedroom five or ten minutes after rubbing her genitals under her underwear while they were sitting on the couch and then licked her "private spot" while they were alone. The victim demonstrated for the jury where her private area was located. She elaborated, stating that defendant put her legs on his shoulders and licked her with his tongue for a short time before she screamed and her sister came into the room.

The CSC I conviction in this case required a sexual penetration. MCL 750.520b(1). Penetration is more than mere contact. *People v Payne*, 90 Mich App 713, 722; 282 NW2d 456 (1979). Sexual penetration is defined to include "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). The statute does not define "cunnilingus" but relying on dictionary definitions, this Court has opined that it "requires the placing of the mouth of a person upon the external genital organs of the female which lie between the labia, or the labia itself, or the mons pubes." *People v Legg*, 197 Mich App 131, 133; 494 NW2d 797 (1992) (citation omitted). Here, the victim described defendant's placing his mouth on her external genital organs. Thus, the evidence supported the jury's determination that defendant was guilty of CSC I.

Defendant argues that the evidence did not demonstrate whether defendant licked her genitals directly: she was wearing underwear and a skort and did not state that the clothing was removed or pushed aside. Further, he points out that forensic testimony demonstrated that the front crotch area of her underwear[1] contained saliva and DNA evidence could not exclude defendant as the donor of the saliva. It could not, however, indicate whether defendant licked the underwear or the genitals. It is true that the victim was not asked about where her clothing and undergarments were when defendant licked her.

Nonetheless, she explicitly stated that defendant licked her private area. Additionally, the victim subsequently told her sister that defendant had licked her private spot, and then told her mother and grandmother that defendant had licked her. She also teased defendant by stating that she had gone to the bathroom before he licked her. Finally, she explained that defendant later rubbed her on the same area "[w]here I showed you where he licked me" and indicated that defendant was rubbing her under her underwear. This evidence supported a reasonable inference that defendant licked the victim's genitals rather than her clothing.

Next, defendant argues that the prosecutor committed misconduct in eliciting testimony from a police officer that the victims told the truth when he interviewed them and that his trial counsel was ineffective in failing to object to this testimony. Where, as here, there is no objection to alleged prosecutor misconduct coupled with a request for a curative instruction, review is limited to determining whether there was plain error that affected substantial rights. *Ericksen*, 288 Mich App at 198. Reversal is warranted only when plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation

---

[1] The testimony was that this underwear was that of another victim, but there also was a strong suggestion was that the evidence had been mislabeled.

of the proceedings. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Claims of ineffective assistance of counsel that are unpreserved are limited to review for errors apparent on the record. *Id*. at 253. The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment[2] right to counsel is reviewed de novo. *Id*. at 242.

Because a prosecutor must seek justice, not merely convictions, the test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant may be denied a fair trial when the prosecutor interjects issues broader than the defendant's guilt or innocence. *Id*. at 63-64. A defendant may also be denied a fair trial when a prosecutor deliberately and repeatedly introduces improper evidence for the purpose of gaining a conviction. *People v Morgan*, 86 Mich App 226, 227; 272 NW2d 249 (1978).

In this case, defendant argues that the prosecutor impermissibly sought testimony from Deputy Sheriff Aaron Kearns about whether the victims told him the truth during his interviews with them. Kearns stated that the stories were consistent and that he thought they told him the truth.

Because witness credibility is for the jury to determine, it is generally improper for a witness to provide an opinion on the credibility of another witness. *Dobek*, 274 Mich App at 71. Thus, any objection to the vouching testimony should have been sustained, and the evidence excluded or stricken. Although a finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence, *People v Abraham*, 256 Mich App 265, 278-279; 662 NW2d 836 (2003), we agree that the vouching evidence was likely offered only to bolster plaintiff's case, and the prosecutor improperly sought its admission.

Nonetheless, defendant has not demonstrated that the evidence was prejudicial or denied him a fair trial. Defendant argues that the trial was a credibility contest and that the vouching evidence undermined his defense that the victims manufactured the allegations. But other evidence corroborated their statements aside from the officer's opinion. Their descriptions of sexual abuse were largely consistent from the time it was reported to each other, their mother, to the police, and throughout the legal process. No evidence was presented of a motive to fabricate the allegations. Enzymes commonly found in saliva were found in one victim's underwear and DNA testing did not exclude defendant as the donor. One victim's father testified that when he walked into the room where defendant was sitting with one of the victims on lap, he saw defendant yank his hand out of a spot where it should not have been. One victim said she saw defendant assaulting the other as they sat together. Finally, as in *Dobek*, 274 Mich App at 70-71, the jury likely understood that Kearns believed the victims because after his interview, plaintiff pursued the prosecution of defendant and called Kearns as a witness at trial.

Defendant argues that his trial counsel provided ineffective assistance in failing to object to Kearns' statements. A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This right to counsel

---

[2] US Const, Am VI.

encompasses the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient as measured against an objective standard of reasonableness under prevailing professional norms and (2) that but for counsel's error there is a reasonable probability that the result of the proceedings would have been different. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). The effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise. *Id.*; *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014).

In this case, any objection by defendant's trial counsel to the vouching testimony should have been sustained, and trial counsel may have been deficient for failing to object. But because the testimony was obvious, given that jurors would logically deduce that the police believed a victim if a prosecution ensued, it may have been trial strategy to not object to the improper questions. Declining to raise objections can often be consistent with sound trial strategy. *Unger*, 278 Mich App at 253. It is possible that trial counsel did not wish to draw attention to, highlight, or appear to fear testimony that the police believed complainant. Additionally, defendant's trial counsel cross-examined Kearns in order to have him highlight that there were some differences between the victims' trial testimony and their statements to police. Thus, we could conclude that the performance of defendant's trial counsel was not deficient, and even if it were, defendant has not established the requisite prejudice. As discussed above, there was other evidence corroborating the victims' reports; they were largely consistent, and the jury would have concluded that Kearns believed them even if he had not so testified. Thus, regardless of the improper vouching, the jury would likely have believed the victims' testimony. Stated otherwise, it is not reasonably likely that the jury's credibility determination would have been different without the objectionable testimony.

Finally, defendant argues that the trial court sentenced him in LC No. 2013-002570-FC based on a misunderstanding of the law. MCL 750.520b(2)(b) provides that "for a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age" punishment shall be "imprisonment for life or any term of years, but not less than 25 years." While imposing the sentence of 25 years to 40 years for defendant's CSC I conviction in LC No. 2013-002570-FC, the trial court noted the minimum sentence and remarked, "And the court is required to impose a maximum sentence that is at least greater than—does not violate the two-thirds rule." Thus, the trial court set the mandatory minimum at 25 years and selected the maximum sentence based on the two-thirds rule.

As a general rule, a sentencing court may not impose an indeterminate sentence with a minimum sentence that exceeds two-thirds of the statutory maximum sentence. MCL 769.34(2)(b); *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972). But neither the two-thirds rule of *Tanner* nor MCL 769.34(2)(b) applies to sentences where the statutory maximum punishment is "life or any term of years." *People v Floyd*, 490 Mich 901, 902; 804 NW2d 564 (2011); *People v Powe*, 469 Mich 1032; 679 NW2d 67 (2004). In this case, the statute provides for a maximum sentence of "life or any term of years;" consequently both *Tanner* and the two-thirds rule of MCL 769.34(2)(b) were inapplicable.

A sentence is invalid when it is based on a misconception of law. *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). A defendant is entitled to resentencing where a sentencing

court fails to exercise its discretion because of a mistaken belief in the law. *People v Green*, 205 Mich App 342, 346; 517 NW2d 782 (1994). Here, defendant is entitled to resentencing.

We affirm but remand for resentencing on the CSC I conviction in LC No. 2013-002570-FC. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan