*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHELINE NICOLE LEFFEW,

Defendant-Appellant.

UNPUBLISHED
April 9, 2020

No. 343818
Arenac Circuit Court
LC No. 17-004120-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEREMIAH JAMES LEFFEW,

Defendant-Appellant.

No. 344240
Arenac Circuit Court
LC No. 17-004119-FH

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

LETICA, J. (*concurring in Docket No. 343818; concurring in part and dissenting in part in Docket No. 344240*).

In Docket No. 343818, I concur in the decision to affirm Micheline Leffew's conviction and sentence. In Docket No. 344240, however, I concur in the decision to affirm Jeremiah Leffew's convictions, but conclude that his sentence is disproportionate; therefore, I would reverse and remand for resentencing.

I agree with the standard of review as set forth in the majority opinion. When deciding whether a departure sentence is more proportionate than a guidelines sentence, this Court should consider: "(1) whether the guidelines accurately reflect the seriousness of the crime, . . . (2) factors not considered by the guidelines, . . . and (3) factors considered by the guidelines but given inadequate weight[.]" *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017)

(citations omitted). On appeal, Jeremiah contends that the trial court relied on many factors to justify a departure that were already accounted for by the guidelines. Although I agree with the majority's resolution of Jeremiah's contention that his subsequent jail assault could have been scored in OV 19, I nevertheless conclude that Jeremiah's sentence does not satisfy the principle of proportionality.

The trial court's sentencing decision placed much emphasis on Jeremiah's prior criminal history, but the court did not explain how this history was not adequately reflected by the sentencing guidelines. Were it not for Jeremiah's prior record, the sentencing guidelines would have provided for a minimum sentence range of 21 to 35 months. But because Jeremiah was a third-offense habitual offender, and because his prior record variable (PRV) score placed him in PRV level D, his minimum sentence range was 71 to 180 months. See MCL 777.63. In other words, Jeremiah's prior record increased the upper end of his minimum sentence range by 145 months, or over 12 years. The trial court failed to explain how that was not adequate to account for his prior record of criminal activity.

Jeremiah also notes that in reference to the applicable sentencing grid, the trial court's sentence exceeds the highest sentence contemplated for any third-offense habitual offender. That is true. If Jeremiah were placed in the highest PRV and OV levels of the applicable grid, his recommended minimum sentence range, as a third-offense habitual offender, would have been 117 to 240 months. MCL 777.63. In other words, the sentencing guidelines—which "embody the principle of proportionality," *Dixon-Bey*, 321 Mich App at 524, do not contemplate a 300-month minimum sentence for *any* third-offense habitual offender convicted of first-degree home invasion. The only way that Jeremiah's 25-year minimum sentence falls within any applicable grid is if he were treated as a fourth-offense habitual offender, and even then, he would have to have either the highest PRV or OV level possible before his sentence would fall within any of the cells of the grid. MCL 777.63. With that in mind, the following passage of *People v Smith*, 482 Mich 292, 307-308; 754 NW2d 284 (2008), is informative:

> It is compelling to compare defendant's departure sentence, 30 to 50 years (360 to 720 months), with the recommended minimum sentences on the applicable sentencing grid. Given [the] defendant's PRV level of C, his recommended minimum sentence could not have been 360 months. The highest recommended sentence on the grid for that PRV level is 225 months. Accordingly, simply comparing [the] defendant's actual minimum sentences to the recommended minimum sentences for offenders with similar criminal histories suggests that [the] defendant's sentences might be disproportionate. [Footnote omitted.]

In the present case, one would need to find a fourth-offense habitual offender with substantially higher OV and PRV scores than Jeremiah before the sentencing guidelines would contemplate the minimum sentence provided by the trial court, and even at that point, Jeremiah's sentence would be near the high end of the range. This clearly "suggest[s] that [Jeremiah]'s sentences might be disproportionate." *Id*. at 308.

In *Smith*, the Court went on to explain:

> Moreover, the substantial and compelling reasons on which the judge based his departure were related to the nature of the offense, not to the extent of [the] defendant's criminal history. Put otherwise, the departure reasons pertained to [the] defendant's OV score, not his PRV score. With regard to the OV score, it is theoretically possible for a defendant to receive a total of 590 points for a crime against a person, such as CSC–I. If a defendant has a low PRV score but an OV score over 100, the court may render a proportionate sentence above the highest minimum for someone with a similar PRV score. This is because the Legislature did not contemplate a defendant with such a high OV score, given that it used 100 OV points as the maximum for the grid.

> However, that is not the case here, because [the] defendant's OV score is within the lower OV levels on the grid. Thus, the trial judge must explain why the reasons for the departure that he articulated warranted a drastic departure from the highest minimum available for a defendant with a similar PRV score. The burden will be heavy, because the sentence imposed is literally off the charts for a defendant with a criminal background similar to that of this defendant. [*Id*. at 308-309 (footnote omitted).]

In the present case, instead of the departure being based largely on the characteristics of the offense, it is based mostly on Jeremiah's criminal background. But the Court's observations in *Smith* apply here as well. Jeremiah's PRV score, as well as his OV score, are not so high as to exceed the highest such scores contemplated by the Legislature.[1] Thus, there would be a heavy burden to explain why Jeremiah should be sentenced to the drastic departure sentence he received, given that his sentence is "literally off the charts . . . ." *Smith*, 482 Mich at 309.

I further note that because Jeremiah was a third-offense habitual offender, his maximum term of imprisonment is 40 years.[2] Pursuant to MCL 769.34(2)(b), which codifies the rule of *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972), Jeremiah's minimum sentence cannot exceed two-thirds of this 40-year maximum. That means that the absolute longest minimum sentence Jeremiah or any other third-offense habitual offender could face for first-degree home invasion is 320 months. Jeremiah's minimum sentence is 20 months shy of that absolute upper limit. In *People v Milbourn*, 435 Mich 630, 653-654; 461 NW2d 1 (1990), which is the seminal case describing the principle of proportionality, the Court wrote:

---

[1] The applicable sentencing grid, MCL 777.63, ends at 75 points for both the OV and PRV levels. Jeremiah's OV score was 35 points, the lowest score possible to be placed in OV Level IV, and his PRV score was 30 points, five points higher than the lowest score possible to be placed in PRV Level D. MCL 777.63.

[2] Pursuant to MCL 750.110a(5), first-degree home invasion is punishable by a maximum term of 20 years' imprisonment. Because Jeremiah is a third-offense habitual offender, this 20-year maximum is doubled. MCL 769.11(1)(a).

With regard to the principle of proportionality, it is our judgment that the imposition of the maximum possible sentence in the face of compelling mitigating circumstances would run against this principle and the legislative scheme. Such a sentence would represent an abdication—and therefore an abuse—of discretion. The trial court appropriately exercises the discretion left to it by the Legislature *not* by applying its own philosophy of sentencing, but by determining where, on the continuum from the least to the most serious situations, an individual case falls and by sentencing the offender in accordance with this determination.

\* \* \*

Where a given case does not present a combination of circumstances placing the offender in either the most serious or least threatening class with respect to the particular crime, then the trial court is not justified in imposing the maximum or minimum penalty, respectively. Accordingly, if the maximum or minimum penalty is unjustifiably imposed in this regard, contrary to the legislative scheme, the reviewing court must vacate the sentence and remand the case to the trial court for resentencing. The discretion conferred by the Legislature does not extend to exercises thereof which violate legislative intent; such exercises are, therefore, an abuse of discretion. [Footnotes omitted.]

In other words, the principle of proportionality ultimately asks the trial court to determine where, on a continuum from the least to the most severe situations, a particular case falls. *Id*. In this case, the most severe sentence possible would have been one of 320 months' to 480 months' imprisonment. The trial court sentenced Jeremiah to nearly this most severe sentence. While Jeremiah's actions and prior record are in no way commendable, I cannot conclude that this case warrants nearly the most severe possible sentence permitted by law.

Ultimately, there may be some reasons justifying a departure in this case. But it is incumbent on the trial court to explain not only the facts justifying the departure, but also the reasons why the *extent* of the departure is warranted. *Dixon-Bey*, 321 Mich App at 525. This is a separate requirement. *People v Bunch*, ___ Mich ___; 935 NW2d 366 (2019) (Docket No. 159820) (emphasis added) ("On remand, the trial court shall either issue an order articulating why defendant's sentence is warranted, *including the extent of the departure*, or resentence the defendant."). Here, the trial court's reasoning relied largely on his prior criminal record, but the trial court failed to explain why it believed Jeremiah's prior criminal history was not adequately taken into account by the sentencing guidelines and his habitual offender enhancement. The trial court imposed a minimum sentence that is five years longer than anything contemplated by the applicable sentencing grid for a third-offense habitual offender. The sentence was also near the very limit that could possibly be imposed against any third-offense habitual offender convicted of first-degree home invasion. I conclude that the sentence is unreasonable, as it does not comport with the principle of proportionality. Accordingly, I would remand for resentencing in Docket No. 344240.

/s/ Anica Letica

-4-