*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CAROL ANN BOAK,

       Defendant-Appellant.

UNPUBLISHED
June 3, 2021

No. 340201
Clinton Circuit Court
LC No. 16-009711-FH

Before: SHAPIRO, P.J., and JANSEN and BECKERING, JJ.

SHAPIRO, P.J. (*dissenting*).

I respectfully dissent and would remand for resentencing. Defendant, a 51-year-old woman with no prior criminal history, was sentenced to a minimum term of 144 months. The relevant guideline range was 57 to 95 months and the presentence investigation report recommended a minimum term of 72 months. The highest sentence that could have been imposed under *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972), would have been 160 months. Thus, the sentence imposed was a substantial departure from the presumptively-proportionate sentencing guidelines and only 16 months short of the maximum-minimum that could have been imposed. In my view, the trial court's reasons for exceeding the guidelines were insufficient to establish a proportionate sentence.

In *People v Dixon-Bey*, 321 Mich App 490, 523-25; 909 NW2d 458 (2017), this Court set forth the relevant standards for reviewing a sentence that exceeds the guidelines:

> When our Supreme Court adopted the principle of proportionality in *Milbourn*,[1] it noted that it did so, in part, to "effectively combat unjustified disparity" in sentencing. Therefore, "[o]ne of the purposes of the proportionality requirement is to minimize idiosyncrasies." The *Milbourn* Court pointed to the sentencing

---

[1] *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

guidelines as an aid to accomplish the purposes of proportionality, noting that they were "a useful tool in carrying out the legislative scheme of properly grading the seriousness and harmfulness of a given crime and given offender within the legislatively authorized range of punishments." In *Smith*,[2] our Supreme Court reiterated that the sentencing guidelines "provide[ ] objective factual guideposts that can assist sentencing courts in ensuring that the offenders with similar offense and offender characteristics receive substantially similar sentences."

More recently in *Steanhouse*,[3] our Supreme Court noted that the Legislature had incorporated the principle of proportionality into the legislative sentencing guidelines. In the same opinion, our Supreme Court repeated its "directive from *Lockridge* that the guidelines 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion' that trial courts " 'must consult' and 'take . . . into account when sentencing . . . .'' ' " Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a "useful tool" or "guideposts" for effectively combating disparity in sentencing. Therefore, *relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight*. When making this determination and sentencing a defendant, a trial court must " 'justify the sentence imposed in order to facilitate appellate review,' " which "includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." [Emphasis added; citations omitted.]

In imposing a sentence well above the guidelines range, the trial court in the instant case did not indicate that there were sentencing factors not taken into consideration by the guidelines nor did it conclude that there were factors the guidelines did not weigh sufficiently. The trial court indicated that it was exceeding the guidelines because: the conduct was "heinous" and "turns my stomach"; concern about public safety; the need to establish deterrence for others who might commit such a crime; defendant did not offer an apology until sentencing and in the court's view the apology was insufficient because it did not address the victims directly.

As the Supreme Court stated in *Milbourn*, 435 Mich at 653-654, "[A] trial court appropriately exercises the discretion left to it by the Legislature *not* by applying its own philosophy of sentencing, but by determining where, on the continuum from the least to the most serious situations, an individual case falls and by sentencing the offender in accordance with this determination."

---

[2] *People v Smith*, 482 Mich 292; 754 NW2d 284 (2008).

[3] *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017).

It is difficult to imagine a circumstance in which the production of child sexually abusive material is not heinous or stomach turning. But there was nothing in this crime that made it more heinous than many others. Arguably, it was less heinous as the child was two years old, asleep, has no memory of the single incident and there was no penetration involved.[4] The trial court's concern for public safety and deterrence was certainly proper, but the court offered no reason why those interests would not have been satisfied by a prison sentence within the guidelines. The Department of Correction's COMPAS evaluation indicated that defendant was a "low risk" for recidivism. The trial court stated that it did not agree with that finding but offered no explanation for its conclusion other than its observation that child sex offenders can live a double life, appearing beyond reproach which masks their ugly side. While this is typically so, it does not speak to the question whether defendant's conduct and history sets her apart from those sex offenders sentenced within the guidelines.

The trial court also noted that a second child was victimized for which defendant pleaded guilty to one count of possession and one count of distribution of child sexually abusive material and received prison sentences for each. The photos of that nine-year-old child[5] were taken by a codefendant and defendant was not present when they were taken, although she clearly participated in discussions about obtaining them and after receiving copies sent them to the other codefendant, Kenneth Thelen, who was her boyfriend and introduced her to child pornography. In light of these two concurrent convictions, defendant was scored 20 points for PRV 7 (her only PRV points) as well as 25 points for OV 13, thereby raising the relevant guideline grid from 24 to 40 months to 57 to 95 months. The trial court did not comment as to why this increase in the guideline range inadequately accounted for the two other offenses, each of which carried a lesser sentence than production, and for which defendant was also sentenced.

The court indicated that the defendant's apology was inadequate to show actual remorse. Defendant's statement reads in pertinent part:

> I did so well for so long. When I left my marriage, I got a whole lot of things going in a good direction. My kids—I raised my kids, I was raised with the right boundaries, and I raised my kids with the right boundaries. This was never, never a thought in my mind, never, I can say that. And then I went bad. My kids are living their lives, they're living good lives. And then I met Mr. Thelen, and he

---

[4] This is not to suggest that characterizing the actions as "heinous" was incorrect. While the two year old was asleep, defendant removed the child's pants and diaper and took a photo of her "in a sexual position with her vagina held open." She then sent the photo to her boyfriend of two years, Kenneth Thelen, who was a codefendant.

[5] The child in these photos was fully clothed but in each photo codefendant Plowman is present, with whom defendant was also intimate. Although this second victim was also not penetrated, Plowman exposed his erect penis and placed it against or near the child who was awake and aware of his conduct. Plowman was sentenced to a minimum term of eight years. The other codefendant, Thelen, who encouraged both Boak and Plowman in these activities, was allowed to plead guilty to attempted production of child sexually abusive material and sentenced to a minimum term of 14 months.

opened up a world that I never, ever been a part of, and I am beyond sorry. I—I stand here taking responsibility for my actions because they were wrong, I know they were wrong. And it was eating at me, you really must know it was eating at me. I could not handle it anymore, I couldn't —it was things he introduced me to and I stand before you saying that, that is my conscience, that is my heart. I worked hard—I worked so hard to do good for so long, but I know I have to take—I am taking responsibility, I know there's punishment, I know that—that is a part of this system, I understand, more than understand, and I've never been more sorry about anything in my entire life. It—it's not anything that will ever—I —I worked hard. I started counseling, and I still write to my counselor. I spoke with mental health at the—at the facility, I can't have an outside therapist come in, that's fine. Rules were meant to be followed, rules are set for a reason, I understand that, completely understand that, and it will not happen, I want no part of it. And I am very, very sorry for what transpired. I don't want—I didn't want any more part of it—one individual wanted to pursue more and I said no, I said no, so no more.

The trial judge was present when the defendant made this statement and I would defer to her conclusion that the apology was not directed at the victims and so therefore less worthy of belief. Nevertheless, I do not believe that the trial court's reasons justified a departure sentence, at least not one of this degree, and would remand for resentencing.

/s/ Douglas B. Shapiro