*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RICKY RAY DICKINSON, JR,

        Defendant-Appellant.

UNPUBLISHED
October 11, 2024
10:08 AM

No. 367288
Genesee Circuit Court
LC No. 19-045670-FH

Before: BORRELLO, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Defendant appeals by leave granted his plea-based conviction of, and sentence for, first-degree criminal sexual conduct, MCL 750.520b(1)(b) (victim is 13 to 15 years old and was related to defendant by blood or they were members of the same household).[1] The trial court sentenced defendant, a second or subsequent sex offender, MCL 750.520f, and a fourth habitual offender, MCL 769.12, to serve a prison term of 360 months (30 years) to 540 months (45 years). We remand this case to the trial court to provide defendant the opportunity to withdraw his plea. If defendant opts not to withdraw his plea, we agree that he is entitled to resentencing.

## I. BACKGROUND

In May 2019, the complainant, who was 14 years old, disclosed at her middle school that she had been inappropriately touched. She then spoke to a police officer and reported that defendant, her father, began sexually assaulting her around October 2018. Thereafter, defendant

---

[1] *People v Dickinson, Jr*, unpublished order of the Court of Appeals, entered October 19, 2023 (Docket No. 367288). Earlier, this Court rejected the prosecution's confession of error because it did not fully concur in the relief sought in defendant's application for leave to appeal, and stated that "the confession of error will be submitted to the panel assigned to decide the application." *People v Dickinson, Jr*, unpublished order of the Court of Appeals, entered September 19, 2023 (Docket No. 367288).

engaged in digital or penile penetration and forced her to perform fellatio. The complainant estimated that defendant sexually assaulted her 15 to 20 times, including three instances of sexual intercourse and five or six instances of fellatio. The sexual assaults typically occurred inside defendant's vehicle.

On September 5, 2019, defendant appeared before the district court, and the prosecutor reported that the parties had entered into a written plea agreement. More specifically, defendant would plead guilty to one count of first-degree criminal sexual conduct (CSC-I), as a second CSC offender and a fourth habitual offender,[2] with no sentencing agreement, in exchange for dismissal of the four remaining CSC-I charges. The plea agreement was signed by the assistant prosecutor, defense counsel, and defendant. As the factual predicate for the plea, defendant, who was under oath, stated that he digitally penetrated his 13-year-old daughter's genital opening while they were in a vehicle in October 2018. Defendant further admitted that he had the following prior convictions: (1) attempted breaking and entering in 1998, (2) two counts of attempted second-degree CSC in 2002, and (3) malicious destruction of property valued at $1,000 to $20,000 in 2002. Noting that it did not have the habitual offender notice before it and that it would be filed in the circuit court, the district court had defendant confirm that he had four prior felony convictions.

The district court accepted defendant's plea. At sentencing, the circuit court noted that the guidelines range for defendant's minimum sentence was 171 months to 570 months, and imposed a sentence of 360 to 540 months' (30 to 45 years') imprisonment.

In April 2020, defendant moved to withdraw his plea or for resentencing. He argued that the plea-taking judge failed to personally advise him that mandatory lifetime electronic monitoring (LEM) was a required condition of his sentence. Defendant further alleged that his counsel "provided . . . faulty advice about the sentencing ramifications as trial counsel admitted in the circuit court." At sentencing, defense counsel had informed the court that she misadvised defendant regarding his potential sentence prior to the plea-taking by failing to consider the impact of his status as a fourth habitual offender. Although counsel told defendant that his minimum sentencing guidelines range was 171 to 285 months, the correct range for a fourth habitual offender was 171 to 570 months. Counsel further reported that she misunderstood the 10-year-gap rule, which also affected defendant's guidelines score.

On June 8, 2020, the circuit court heard defendant's motion and took it under advisement. Over three years later, appellate counsel wrote a letter to the court, indicating that he was "following up again," adding that the circuit court judge had taken the motion under advisement, but had "never made" a decision.

On July 24, 2023, the circuit court judge's successor denied defendant's motion to withdraw his plea. The successor judge determined that the plea-taking court's failure to personally advise defendant of the mandatory LEM was harmless because defendant had actual knowledge of this requirement when the prosecutor placed it on the record during the plea-taking.

---

[2] The plea agreement specified a "Sentence Enhancement" and a box in front of "HO4" was checked.

-2-

The judge further determined that defendant's minimum sentence fell within the guidelines with or without application of the 10-year-gap rule. However, the judge did not specifically address whether plea-taking counsel was ineffective for misadvising defendant about his sentencing guidelines range by failing to consider defendant's fourth habitual offender status. Nor did the court mention defendant's argument that the prosecution failed to timely file the habitual offender notice; however, it concluded that "Defendant was notified of his status numerous times prior to and during the entry of his plea." Finally, the court agreed with the parties that defendant was entitled to sentencing credit.

On August 8, 2023, the successor judge signed an amended judgment of sentence to reflect the appropriate jail credit. And, despite earlier determining that defendant was not entitled to withdraw his plea because the plea-taking court failed to personally advise defendant about the LEM, the amended judgment of sentence did not impose LEM as a sentencing condition. See MCL 750.520b(2)(d) ("In addition to any other penalty imposed under [MCL 750.520b(1)](a) or (b), the court shall sentence the defendant to [LEM] under [MCL 750.]520n.")

On appeal, defendant argues that the trial court erred by denying his motion to withdraw his guilty plea because there were defects in the plea-taking process. Alternatively, defendant argues that resentencing is required because the court scored Offense Variable (OV) 10 incorrectly and the sentencing court mistakenly applied the two-thirds rule, *People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972). See also MCL 769.34(2)(b).

## II. PLEA WITHDRAWAL

This Court reviews for an abuse of discretion the trial court's decision regarding a motion to withdraw a plea. *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*.

Defendant argues that there were three defects in the plea-taking process that require plea withdrawal: (1) defense counsel performed deficiently when she advised him of an incorrect guidelines range, misleading him about the potential sentence he could expect; (2) the court failed to inform defendant that his sentence would necessarily include LEM; and (3) the prosecution failed to file timely notice of its intent to pursue the habitual-offender sentencing enhancement. On appeal, the prosecutor now concedes that defendant is entitled to withdraw his plea because the plea-taking court failed to inform him that LEM was a sentencing requirement for his conviction.[3] We agree. See MCR 6.302(A) and (B)(2); *People v Cole*, 491 Mich 325, 332-337;

---

[3] We recognize that defendant's most recent judgment of sentence does not impose LEM; however, because we conclude that defendant is entitled to resentencing, this issue is not moot given that we anticipate the resentencing court will impose LEM as required by MCL 750.520b(2)(d).

We further recognize that our Supreme Court granted oral argument to address whether LEM is cruel or unusual punishment or constitutes an unreasonable search in violation of the constitution. See *People v Kardasz*, ___ Mich ___; 6 NW3d 405 (2024).

-3-

817 NW2d 497 (2012) ("[W]hen the governing criminal statute mandates that a trial court sentence a defendant to lifetime electronic monitoring, due process requires the trial court to inform the defendant entering the plea that he . . . will be subject to mandatory lifetime electronic monitoring."); *People v Brown*, 492 Mich 684, 698-699; 822 NW2d 208 (2012). The remedy for a plea that failed to comply with MCR 6.302(B) is to permit the defendant an opportunity to withdraw the plea. *Brown*, 492 Mich at 698. See also MCR 6.310(C).[4]

## III. SENTENCING

Because defendant may opt to continue with his plea agreement, it is necessary to address his claim that he is entitled to resentencing. Defendant argues that the sentencing court improperly assessed 15 points for OV 10. MCL 777.40. We agree.

This Court reviews the trial court's factual determinations at sentencing "for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587; 935 NW2d 66 (2019) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

A sentencing court must consult the advisory sentencing guidelines and assess the highest number of points possible for all applicable OVs. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). The sentencing offense determines which OVs are to be assessed, and the appropriate OVs are generally assessed on the basis of the sentencing offense. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008).

A sentencing court must assess 15 points for OV 10 if it determines that predatory conduct was involved in the sentencing offense. See MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a).

In *People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008), the Supreme Court stated that OV 10 is properly scored at 15 points when the responses to the following inquiries are affirmative:

(1) Did the offender engage in conduct before the commission of the offense?

---

[4] Because defendant is entitled to withdraw his plea on this ground, we decline to address his claims that counsel was ineffective and that the prosecution untimely filed the habitual offender notice.

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

Our Supreme Court has explained that predatory conduct involves only conduct that is "commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011), quoting *Cannon*, 481 Mich at 162. Predatory conduct is conduct that "created or enhanced" a victim's vulnerability, including actions to gain a victim's trust and exploiting that trust to facilitate a sexual assault. *People v Barnes*, 332 Mich App 494, 503-504; 957 NW2d 62 (2020).

In this case, the sentencing court concluded that defendant engaged in predatory conduct, stating:

He had been convicted of a similar crime in the past.[5] It was over a period of time. It was the daughter. Threats, bribes, I mean if this isn't predatory then I'm not sure what is.

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). In defendant's PSIR, the probation department recommended that the sentencing court assess 15 points for OV 10. The probation officer elaborated:

OV 10 was scored due to the following:

The sexual assaults occurred between the period of October 2018 to April 2019. The victim reported that the sexual assaults would occur "whenever I want something." The victim reported that . . . defendant would make her give him oral sex and would buy her candy or items in return for sexual favors. The victim reported that she needed new cleats for softball and her father stated he would get them for her but she "needed to pay up" and that he didn't care if she wanted to do sexual favors for him or not. The victim reported that she allowed the defendant to

---

[5] In 2001, defendant, then 21 years old, was charged with five counts of third-degree CSC with a 14-year-old girl, who became pregnant. Defendant pled guilty to two counts of attempted second-degree CSC the following year. After serving his sentence, defendant had three children, including the victim in this case, with the victim's mother, whom he married in 2012. That defendant repeatedly had sexual relations with his teenage daughter 17 years after he committed his 2001 offenses does not establish by a preponderance of the evidence that his conduct during the sentencing offense was predatory.

"finger her" while he was driving her to Walmart in Clio. She disclosed that these types of incidents would happen all the time if she wanted something.

The PSIR further reflected that the school counselor told the responding officer that the person "who assaulted her would buy her candy, clothing, and bought her new cleats for softball." Even so, the victim also described an incident where defendant entered her bedroom and began sexually assaulting her. And, when interviewed by the responding police officer,

> [t]he victim reported that the sexual contact by her father started during or around October 2018. She stated that the first incident occurred when she, her father, and his friend [] went fishing together. The victim reported that [defendant's friend] was asleep in the car while they were driving down the road. Her father touched her vagina and penetrated her with his fingers. She stated that the sexual contact continued **since then** and has occurred about once a month "[w]henever I want something." [Emphasis added.]

At the plea-taking, consistent with the amended information, defendant pleaded guilty to the initial sexual assault that occurred in October 2018. Under oath, defendant admitted that he digitally penetrating the victim's vagina while they were in a vehicle.

We agree that defendant undoubtedly engaged in predatory conduct during his subsequent sexual assaults by providing the victim with gifts or demanding sexual favors in exchange for items the victim needed. See e.g., *People v Johnson*, 298 Mich App 128; 826 NW2d 170 (2012) (The trial court properly assessed 15 points for predatory conduct when the defendant, among other acts, bought the teenaged girl he sexually assaulted numerous gifts). On this record, however, there was no evidence to support the trial court's factual determination that defendant threatened or bribed the victim during the sentencing offense. Because defendant is entitled to be sentenced on accurate information and a 5-point reduction in defendant's OV score alters the applicable sentencing grid, defendant is entitled to resentencing.[6] *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006).

Remanded to the trial court to afford defendant the opportunity to withdraw his plea. If defendant opts not to withdraw his plea, he is entitled to resentencing. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Christopher M. Murray
/s/ Anica Letica

---

[6] Given that defendant is entitled to resentencing, we need not address his contention that the sentencing court mistakenly believed that the *Tanner* rule applied and required it to raise defendant's maximum sentence from 480 to 540 months.