# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WILLIAM EARL SHERMAN,

Defendant-Appellant.

UNPUBLISHED
June 19, 2018

No. 335973
Macomb Circuit Court
LC No. 2016-001307-FC

Before: SWARTZLE, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of second-degree murder, MCL 750.317. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 27 to 40 years of imprisonment. We affirm defendant's conviction and sentence, but remand for the ministerial task of amending the judgment of sentence to reflect defendant's correct habitual-offender status.

## I. BACKGROUND

This case arises out of the early-morning stabbing death of Andrew Logsdon at his home. The victim lived in the home with defendant and three other people: Victor Marcus, Elizabeth Tankiewicz, and Anthony Rappazini. On the night leading up to the event, the victim, Tankiewicz, Marcus, and Rappazini were using heroin. Tankiewicz, Marcus, and the victim retired for bed, but were later awoken by defendant and Rappazini, who claimed that the victim had stolen their money.

An argument ensued between the five roommates after the victim discovered that defendant had ransacked the victim's room and the victim's money and other belongings were missing. The argument peaked when Marcus discovered that defendant had in his possession the exact amount of money that was reportedly missing. Marcus punched defendant in the head, gave defendant a garbage bag, and instructed him to start packing and leave the home. At some point immediately before or after the punch, the victim grabbed the money. According to Tankiewicz, defendant then went upstairs and the victim followed him, neither having anything in their hands. Approximately 30 seconds or a minute later, the victim yelled, "[Marcus], get up here. [Defendant] just stabbed me."

-1-

According to Tankiewicz, Marcus ran upstairs and told her to call 911. Marcus testified that, when he reached the upstairs, he saw the victim "slouched in the corner . . . and [defendant] pull the blade out of his chest and stick it in again and then pull it out quick." Marcus stated that, at that point, he punched defendant, who was standing over the victim while still holding the knife. Marcus further stated that defendant fell after the punch, but remained holding the knife. Marcus explained that he got on top of defendant's back and head, and continued punching him, while continually telling defendant to drop the knife. Rappazini also came upstairs and helped disarm defendant by kicking the knife away after defendant dropped it. The knife belonged to the victim, who kept the knife on the dresser in his bedroom. Tankiewicz called the police, and while she was still on the phone, went upstairs and saw the victim bloodied and unconscious, at which time she covered the victim's wounds per the 911 operator's direction. The victim was stabbed a total of 10 times, which included four stab wounds on the victim's back. The victim eventually died from his injuries.

After defendant was disarmed, he told Marcus, "Don't call the police, please." Tankiewicz and Marcus told defendant to leave, and defendant obliged. As Officer Steven Reed was responding to the call, he observed defendant walking away from the home and arrested him without incident. When defendant was arrested, he acknowledged stabbing the victim, although he alleged that he did so in self-defense. Defendant had injuries following the incident—blood in his mouth, facial injuries, and head and neck pain—and was transported to the hospital to be treated for those injuries. When answering the paramedic's question as to what happened to him, defendant responded that someone stole his money, but "that person would never do that again." At the hospital, defendant was interviewed by police. Defendant again asserted that he acted in self-defense but gave inconsistent statements as to whether he was being assaulted by a single person or multiple persons and whether the victim had a knife or was unarmed.

Defendant was charged with first-degree premeditated murder, MCL 750.316. Prior to trial, the prosecutor sought to introduce evidence of defendant's prior stabbing of defendant's father under MCL 768.27b. Defendant responded that the other-acts evidence was unfairly prejudicial under MRE 403. The trial court issued a pretrial order admitting the evidence over defendant's objection. At trial, defendant's father testified regarding the prior stabbing. Approximately three years before the stabbing at issue in this case, defendant was living with his parents and his father told defendant that, if he was not going to clean up after himself, then he should move out. An argument followed and defendant called his mother a "b----." Defendant's father squared up to defendant and gave defendant a chance to hit him. Defendant's father did not recall defendant stabbing him in the back with a knife, but was told by defendant's mother that defendant had stabbed him. Defendant's father did remember, however, turning around and taking the knife out of defendant's hand. Defendant's father also testified that, even though he did not recall his son stabbing him, he did put a bandage on his injury and went to the hospital.

Center Line Police Sergeant Lisa Grace testified that she was dispatched to defendant's father's home and, after speaking with defendant's mother, determined that defendant had stabbed his father. As Grace approached defendant, defendant got into a "fighter stance" and was not complying with commands. Another officer attempted to handcuff defendant, which caused defendant to "cock[] back like he wanted to punch" the officer. Defendant was tasered, but continued to resist arrest. Defendant was eventually subdued but refused to cooperate with

the investigation. Ultimately, defendant pleaded guilty to felonious assault and resisting and obstructing a police officer.

Prior to deliberating, the trial court instructed the jury that defendant could be found not guilty or guilty of (1) first-degree premeditated murder, (2) the lesser-included charge of second-degree murder, or (3) the lesser-included charge of manslaughter. The jury was also instructed on the doctrine of self-defense. As stated above, the jury convicted defendant of second-degree murder. The trial court scored defendant's total offense-variable score at 130 points, placing him in the OV III classification. The trial court sentenced defendant within the guidelines as a third-habitual offender to 27 to 40 years of imprisonment.

This appeal followed.

## II. ANALYSIS

### A. Other Acts of Domestic Violence

Defendant first argues that the trial court erred when it admitted his other act of domestic violence because the evidence was overly prejudicial to him. "The decision to admit evidence is within a trial court's discretion, which is reviewed for an abuse of that discretion." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo, and it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Bynum*, 496 Mich at 623.

MCL 768.27b(1) provides that, in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under MRE 403. MCL 768.27b(5)(a) defines "offense involving domestic violence" to include "[c]ausing or attempting to cause physical or mental harm to a family or household member. MCL 768.27b(5)(b) defines "[f]amily or household member" to include "[a]n individual with whom the person resides or has resided." This Court has specifically held that, unlike other acts evidence introduced under MRE 404(b), MCL 768.27b "permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act." *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010).

Here, defendant stabbed his father, with whom he lived at the time. Such an act constitutes domestic violence against a family or household member and evidence of the act was therefore admissible under MCL 768.27b for any purpose for which it was relevant. Nonetheless, even though the evidence was admissible under MCL 768.27b, it was still subject to MRE 403. MRE 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," among other considerations. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

Here, the two acts were very similar. In both acts, defendant used a knife against a household member when he felt like his housing may be taken away from him. Only three years had elapsed between the two events, showing a close temporal proximity. Moreover, the reliability of the other-acts evidence was substantial given defendant's guilty plea. In the previous case, defendant stabbed his father despite defendant's father never physically touching him. Here, given that the initiation of the physical conflict between defendant and the victim occurred outside the view of the witnesses, the prior act was highly relevant to assessing defendant's claims that the victim attacked him and that defendant acted out of self-defense. Finally, the other-acts evidence was not very graphic as compared to the charged crime and was fairly brief. The risk that the jury would give the evidence preemptive weight was minimal. Therefore, the trial court did not err in concluding that evidence of the prior stabbing was not unfairly prejudicial under MRE 403.

The trial court did, however, err by admitting evidence that defendant resisted arrest during the prior stabbing incident. The police officers in the earlier case were not members of defendant's family or household. Thus, any violence defendant enacted in resisting arrest was not domestic violence and was therefore inadmissible under MCL 768.27b. Nonetheless, we find that this error was harmless. In the prior case, defendant resisted arrest and pleaded guilty to the stabbing. In this case, defendant did not resist arrest, but rather complied with his arrest and immediately asserted self-defense. Thus, defendant's prior resisting-arrest conviction cuts against his guilt of the instant second-degree murder charge. Moreover, the testimony regarding the earlier resisting arrest was brief and not graphic or otherwise sensational. Thus, although the trial court erred by admitting the evidence of defendant's resisting-arrest conviction, because the error did not prejudice defendant's defense, he is not entitled to reversal of his conviction.

B.   Sufficiency of the Evidence

Defendant argues that the evidence presented at trial was insufficient to convict him of second-degree murder. Defendant does not directly attack the elements of second-degree murder, but rather argues that he was acting out of self-defense because of the victim's aggression. Alternatively, defendant argues that his conviction should be mitigated to voluntary manslaughter because he was acting out of the heat of passion based on adequate provocation. We disagree.

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). In reviewing the sufficiency of the evidence on appeal, this court views the evidence in the light most favorable to the prosecution and must determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[C]ircumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *Solloway*, 316 Mich App at 180-181.

*Self-Defense*. A defendant "may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat" if the defendant "has not or is not engaged in the commission of a crime at the time he or she uses deadly force" and "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a).

An individual does not act in justifiable self-defense when he uses excessive force. *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). Once evidence of self-defense is admitted at trial, the prosecutor must disprove it beyond a reasonable doubt. *People v Roper*, 286 Mich App 77, 86; 777 NW2d 483 (2009).

Sufficient evidence existed to show that defendant was not acting in self-defense when he killed the victim. First, the only evidence that the victim was armed is defendant's own inconsistent statements. The record shows that, when the victim followed defendant up the stairs, the victim was not armed. When Tankiewicz and Marcus came upstairs approximately one minute later, defendant was standing over the victim with the knife. No witness testified that they saw the victim with the knife at the time of the incident and, to the extent that defendant could have disarmed the victim, he has not shown any evidence consistent with disarmament. Additionally, defendant's prior stabbing of his unarmed father, who did not physically attack defendant, tends to show defendant's propensity for initiating physical conflict. More importantly, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007). The jury weighed the evidence, including defendant's statements, and rejected defendant's version of events.

Second, even assuming that the victim did attack defendant first, the record shows that defendant's response was excessive and therefore unjustifiable as self-defense. The victim was stabbed ten times—four of which were in the victim's back and at least one of which occurred while the victim was slouched over and posed no threat to defendant. Moreover, even though the victim had ceased to be any threat, defendant refused to relinquish the knife, and Marcus had to use force to remove the knife from defendant's possession. Given this, the evidence was sufficient for the jury to conclude that, even had defendant started to act out of self-defense, defendant's continued response was excessive. Therefore, defendant is not entitled to reversal of his conviction under the doctrine of self-defense.

*Voluntary Manslaughter*. In the alternative, defendant argues that he was provoked and should have been convicted of voluntary manslaughter, not second-degree murder. "To show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Reese*, 491 Mich at 143 (internal citation and notation omitted). "The degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *People v Tierney*, 266 Mich App 687, 714–715; 703 NW2d 204 (2005) (internal citation and quotation marks omitted). "In order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Id*. (internal citation and quotation marks omitted). "The determination of what is reasonable provocation is a question of fact for the fact-finder." *Id*. (internal citation and quotation marks omitted).

Defendant argues that he was adequately provoked because he was repeatedly assaulted by multiple individuals. While it is true that he asserted this fact during his police interview, considering the jury's verdict, the jury chose not to find this assertion credible. The jury was properly instructed that it was responsible for determining whether defendant was provoked and whether a sufficient cooling off period had elapsed. The jury found defendant guilty of second-

degree murder, despite having the option to find that defendant was provoked in the heat of passion. Accepting the jury's credibility determinations as final and viewing the evidence in the light most favorable to the prosecution, the record indicates that defendant was only punched one time by Marcus before his stabbing of the victim. There is no evidence that the victim physically harmed defendant before the stabbing, and, based on this record, a single punch is clearly not enough for a reasonable person to lose control and stab a third person who has not physically threatened him. Therefore, sufficient evidence existed to show that defendant acted out of malice rather than the heat of passion.

### C. Indeterminate Sentencing

Defendant also argues that the trial court failed to comply with *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972), because his minimum sentence of 27 years violates the two-thirds rule based on defendant's 40-year maximum sentence. Defendant did not raise the two-thirds issue before the trial court or in a proper motion to remand filed with this Court; therefore, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Clark*, 315 Mich App 219, 223-224; 888 NW2d 309 (2016).

In *Tanner*, 387 Mich at 690, the Supreme Court concluded that, because a "sentence with too short an interval between minimum and maximum is not indeterminate, . . . any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act." MCL 769.34(2)(b) codified the ruling in *Tanner* and provides that "[t]he court shall not impose a minimum sentence, including a departure, that exceeds 2/3 of the statutory maximum sentence."

A *Tanner* violation does not occur, however, where the maximum possible sentence is "life or any term of years" because "the minimum will never exceed 2/3 of the statutory maximum sentence of life." *People v Harper*, 479 Mich 599, 617 n 31; 739 NW2d 523 (2007). Because second-degree murder carries a sentence of "life, or any term of years," MCL 750.317, defendant's conviction is not subject to the *Tanner* rule.

Defendant argues that the life-maximum exception to *Tanner* can be traced back to MCL 769.34(10) and that, because *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), invalidated MCL 769.34(10), the life-maximum exception is no longer good law. Contrary to defendant's assertion, however, MCL 769.34(10) survives *Lockridge*. See *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016) (stating that "*Lockridge* did not alter or diminish MCL 769.34(10)"). Defendant's argument is therefore without merit.

### D. OV Scoring / Accurate Information

Next, defendant challenges the bases for the trial court's sentence. First, defendant argues that the trial court erred by assigning 25 points for OV 6 and 10 points for OV 9. According to defendant, OV 6 should have been scored at 10 points and OV 9 should have been scored at zero. The trial court scored defendant at a total OV score of 130, thereby categorizing him at an OV level III. Defendant argues that his total OV score should be reduced by 25 points to 105.

Yet, even assuming that his total OV score should have been 105, defendant would still be categorized at an OV level III. MCL 777.61. Because the adjustment would not alter defendant's total OV level, it would not alter his minimum-sentencing range. Because any scoring error would not alter defendant's minimum-sentencing range, we need not address the purported error. See *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016).

Defendant also argues that resentencing is appropriate because the trial court relied on inaccurate information at sentencing. While it is true that a defendant is entitled to resentencing if his sentence is based on inaccurate information, *People v Jackson*, 487 Mich 783, 794; 790 NW2d 340 (2010), the record does not support defendant's assertion. While considering OV 6, the trial court summarized the relevant testimony that it heard at trial. Specifically, the trial court stated, "And then [the victim] went upstairs, [defendant] went upstairs." It is from this statement that defendant argues that the trial court misunderstood the testimony to mean that defendant followed the victim upstairs, presumably implying that defendant was stalking or pursuing the victim. Defendant, however, reads too much into the trial court's statement. The trial court merely stated that both men went upstairs without indicating any order in which they did so. Given that, just before the trial court's statement, defendant's attorney stated that "[d]efendant went upstairs and then was shortly thereafter followed by [the victim]," we are unable to conclude that the trial court mistakenly believed that defendant followed the victim upstairs or that the trial court relied on inaccurate information when rendering its sentence.

E.    Reasonable Sentence

Finally, defendant argues that his sentence was unreasonable under the circumstances. We review for an abuse of discretion whether a sentence is reasonable. *People v Steanhouse*, 500 Mich 453, 459-460, 476; 902 NW2d 327 (2017). A trial court abuses its discretion when the sentence is not proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Id*. at 459-460, 476.

Here, defendant's sentence was within the recommended guidelines range. Sentences within the appropriate guidelines range are presumed proportionate, *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008), and must be affirmed on appeal "unless there was an error in scoring or the trial court relied on inaccurate information," *Schrauben*, 314 Mich App at 196. As stated above, defendant's sentence was not the product of an error that would affect the scoring or any inaccurate information. Accordingly, we affirm defendant's within-guidelines sentence.

Nonetheless, defendant's judgment of sentence does contain a clerical error that requires correction. The judgment of sentence lists defendant as a fourth-habitual offender under MCL 769.12. In fact, according to the original notice, the presentence-investigation report, and the parties' discussions during sentencing, defendant was a third-habitual offender under MCL 769.11. Therefore, we remand for the ministerial correction of defendant's judgment of sentence to reflect his appropriate habitual-offender status. See *People v Ericksen*, 288 Mich App 192, 206; 793 NW2d 120 (2010).

Affirmed but remanded for the ministerial correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra